WEST *vs.* CUNNINGHAM.

1. The seller of property may resort to his action against the purchaser, for the recovery of such damage as he shall sustain, for the failure of the latter to complete his purchase.

2. In such case, the recovery must be graduated, by the injury which the seller sustains.

3. If the purchaser refuses to comply with his contract, the seller need not continue ready to deliver the article :· he may sell it, and sue immediately, for the damages he has sustained,— but a re-sale is not necessary to fix the liability of the purchaser.

4. Nor is it necessary that the purchaser have notice of the time and place of the re-sale.

5. The amount yielded at the re-sale, is not conclusive to shew the extent of this liability.

6. The rule, that a sound price warrants sound property—unless there be a special agreement to take the property, sound or unsound—is not according to the course of judicial decision at common law; and is not the law of this State.

7. A bill of exceptions is not waived, by a motion for a new trial.

8. A motion for a new trial is addressed to the discretion of the court ; but the court trying a cause ought not to grant a new trial, for causes embraced by a bill of exceptions—unless the party waive the exception.

9. But if the primary court make no such requisition of a party moving for a new trial, but allow the exception, and overrule his motion ;—the appellate court cannot refuse to consider the exception.

Error to the County court of Mobile.
Case in assumpsit.

West *vs.* Cunningham.

The plaintiff brought assumpsit, in the County court of Mobile, to recover of the defendant, damages, sustained in consequence of the defendant's refusal to receive of him, a large number of oranges, which he had purchased, and for which he had agreed to pay a sum of money, amounting to seven hundred and fifty dollars. The case was tried on the *general issue.*

On the part of the plaintiff, evidence was given, to show that the agents of the plaintiff sold to the defendant, a lot of oranges, invoiced at eighty thousand, but estimated, in the sale, at fifty thousand. The contract was made about three o'clock, in the afternoon, on the deck of the vessel, on which the oranges were, and the fruit was open to the inspection of all: further, the price stipulated, was fifteen dollars per thousand. By the terms of the contract, the oranges were to be delivered immediately; and the agents of the plaintiff gave notice to the defendant, that if he did not take away the oranges, according to his contract, they would be sold at his risk; and that they were re-sold on board the vessel, at public auction, in small quantities, to suit purchasers; that a large number of persons were present at the sale, and the amount of sales was about two hundred and sixty dollars. The plaintiff further proved, that in the opinion of a witness, who testified, the oranges would have counted more than fifty thousand, that were sound.

The defendant introduced evidence, tending to show, that the oranges were warranted to be sound, and of good quality when he purchased them, and that they were unsound.

On these facts, the court charged the jury, "that there

9 P                    14

West *vs.* Cunningham.

was no doubt of the legality of a re-sale of goods, on account of a former purchaser, who refuses to take goods, by him fairly purchased; but such re-sale must be made public, and public notice given, and notice thereof given to the first purchaser." The court further charged the jury in the following words, to wit: "A sound price is a warranty for sound property, unless some special agreement be made, by which the goods or property are to be taken by the purchaser, whether sound or unsound."

To which several opinions, the plaintiff excepted, &c. And verdict and judgment having been rendered for the defendant, the plaintiff moved the court for a new trial; which motion having been decided against him, he has prosecuted his writ of error to this court.

*Campbell*, for the plaintiff in error.
*Stewart*, contra.

COLLIER, C. J.—That the seller of property may resort to his action against the purchaser, for the recovery of such damages as he shall sustain, by the failure of the latter to complete his purchase, is a proposition too plain to require illustration. In such a case, the recovery must be graduated by the injury which the seller sustains; unless, perhaps, where that injury is increased by his own imprudent course of conduct, in regard to the thing sold. If a purchaser refuses to comply with his contract, he absolves the seller from the obligation to continue in a situation which will enable him to deliver the article sold: whenever he shall, thereafter, change his mind, he may sell it if he think proper. In fact, a

West *vs.* Cunningham.

sale, if properly conducted, never can prejudice the purchaser, and would often be beneficial to the seller. Suppose the thing sold, subject to waste or to perish, immediately,—if the seller were obliged to keep it, the purchaser would be liable to the full amount of the purchase money; but, if allowed to re-sell them, the purchaser would be entitled to a credit, for so much as it yielded, upon the resale, and would only be charged for the deficit. Thus we discover, how unreasonable would be a rule, requiring the seller to suffer the article to perish on his hands, and run the risk of the solvency of the buyer. It is unnecessary, however, to consider at greater length, this particular question, for it was largely examined, in the School Commissioners vs. Aikin—(5 Porter's Reports, 169;) and in that case, the court say, "After a purchaser has absolutely refused to comply with a contract of sale, the seller is at liberty to consider the contract at an end, and immediately sue for the damages he has sustained."

In that case, the declaration disclosed the fact of a resale, and stated the difference between the first and second sale, and this was the sum sought to be recovered. The court say, further—"A re-sale was not necessary to fix the liability of the defendant for a breach of contract, and the action, in another form, could have been maintained, without showing a re-sale: it might be one mode of ascertaining the amount of damages, perhaps the best, but certainly not the only way of ascertaining the same."

To the same effect is Adams vs. M'Millan—(7 Porter's Rep. 73.) If a re-sale was not essential to the plain-

tiff's right, and was not conclusive, as to the damages, to which he was entitled, it is difficult to conceive of any reason for requiring the purchaser to be informed of the time and place of re-sale. The amount yielded, at the re-sale, we have seen, is not conclusive, to show the extent of his liability, and he may, whether he have notice or not, show its unfairness; or that it was made, under circumstances, unusual, and calculated to prevent a sale, at a fair price. The contract, then, between the seller and purchaser, being at an end, in consequence of the default of the latter, he had no right to insist upon the necessity of notice: and the court erred in the instruction to the jury, on this point.

The second instruction of the judge of the County court, is entirely opposite to the course of judicial decision at common law—and though it may be defensible in ethics, or sustained by a well settled rule of the civil law, we do not feel called on to examine it further; but will content ourselves with saying, that it is adverse to the previous decisions of this court—(See Ricks vs. Dillahunty, 8 Porter, 000, and cases there cited.)

It was objected at the argument, by the defendant's counsel, that under the pleadings, the plaintiff could not have been injured by the charge to the jury, however erroneous it may be in itself. We think otherwise: the first count in the declaration is well adapted to the facts disclosed in the bill of exceptions, and the instructions to the jury calculated to prevent a recovery.

The defendant's counsel, upon the supposition that the opinion of the court might be against him, upon the questions of law raised by the plaintiff, insists that the

West *vs.* Cunningham.

bill of exceptions was waived by the decision of the County court, on the plaintiff's motion for a new trial.

In the first place, it may be remarked, that the record does not inform us for what cause the motion for a new trial was submitted to the County court, so that, for any thing appearing to the contrary, it may have been founded on causes entirely different from those embraced by the bill of exceptions. If such be the true state of fact, —and if necessary, we would intend it,—it was the duty of the County court to have entertained the motion for a new trial, without putting the plaintiff to elect the motion at the expense of waiving his exception.

But for the purpose of settling a question of practice, we will suppose that the grounds of exception, and motion for a new trial, were identical. It is said, that if a party is dissatisfied with a decision of a *subordinate court*, upon a point of law, he may *ordinarily* cause it to be reviewed in either one of two modes. 1st. He may move the court for a new trial ; 2d. He may tender his bill of exceptions, and thus put the question on record, in order that it may be examined on appeal or writ of error. But he should not, *under ordinary circumstances*, be allowed by the subordinate court to pursue both courses. If he relies on his motion for a new trial, then his objection does not appear on the record, and of course an appeal or writ of error would be of no avail. But if he have his bill of exceptions sealed, the court should not grant a new trial, on the ground stated in the bill of exceptions, for the question is then on the record, and the error, if any, may be corrected by an appellate court—(Fabrigas vs. Mastyn, 2 Wm. Bla. R. 929.) It has more recently been

West *vs.* Cunningham.

decided, that the court will, *in no case*, grant a motion for a new trial, when a bill of exceptions has been tendered, unless it be subsequently abandoned—(2 Chitty's Rep. 272; S. P. Cogswell vs. Brown, 1 Mass. R. 237;) but in Reed vs. Miller, (1 Bibb's R. 142,) it was determined, that the court have no right to require a party to withdraw his exception to their opinion, before they will entertain a motion for a new trial, presenting the same questions of law. And in Danham et al. vs. Baxter, (4 Mass. R. 79,) it was held, that the court will grant a new trial, without requiring the right of review to be waived, in a case where the court was of opinion, on the trial, from the facts shown by the plaintiff, that the law was such he could not recover, and stopped the examination of witnesses for the defendant on that ground; but the jury found a verdict for the plaintiff, against the direction of the judge.

A motion for a new trial addresses itself to the discretion of the court trying the cause, and is governed by the circumstances of the case, and those rules which have, from time to time, been adopted, as applicable to the subject. Following what we conceive to be the best established practice, we are of opinion, that the court trying the cause ought not to grant a new trial for the causes embraced by a bill of exceptions, unless the party submitting a motion distinctly waives the exception. If, however, the primary court make no such requisition of a party moving for a new trial, but allows his exception, and considers and overrules his motion for a new trial, the appellate court cannot refuse to consider the exceptions. This would be to interfere with the discretion of

the primary court, or rather to determine, that it had been universally exercised, and was the subject of revision—an assumption entirely indefensible.

The judgment of the County court must be reversed, and the case remanded.