[Cook & Laurie Contracting Co. v. Bell.]

# Cook & Laurie Contracting Co. *v.* Bell.

## *Assumpsit.*

(Decided May 9, 1912. 59 South. 273.)

1. *Sales; Transfer of Title; Goods Identified and Separated from Mass.*—Under a contract for the sale of a part of the known and definite mass, in possession of the seller, the whole mass being of the same kind, quality and value, the agreement becomes an executed contract of sale, and the title passes to the buyer as soon as his portion is separated by the seller from the mass, and identified as such; provided, of course, that under the contract the seller is to make the selection and the sale is not for cash on delivery.

2. *Same; Delivery and Acceptance.*—Where the contract is for a sale of a part of the known and definite mass, in the possession of the seller, the whole being of the same kind, quality and value, the mere act of the seller in separating the part contracted for is not sufficient to pass title, in the absence of an agreement that the seller is to make the selection; in such a case the buyer must be informed of the separation, and assent thereto.

3. *Same.*—Where a part of the cement on hand in the seller's warehouse is contracted for, and the seller stacks it in bins marked with the buyer's name, and sends the buyer a bill therefor with a sketch showing where it was stored, a letter from the buyer acknowledging receipt of the bill and sketch and promising to remit payment, amounted to an acceptance of the seller's act as a constructive delivery.

4. *Same; Effect of Loss.*—After title to goods has passed to the buyer their destruction does not affect the rights of the seller as such, unless the contract imposes on the seller the obligation to deliver the goods safely as a condition precedent to the buyer's obligation to accept or pay for them.

5. *Same; Jury Question.*—The question of the intention of the parties to execute a contract of sale by the transfer of title is usually one of fact for the jury.

6. *Same.*—Under the evidence in this case, and under the contract there was a prima facie showing that title had passed from the seller to the buyer.

7. *Same; Construction; Intent.*—Usually the execution of a contract of sale by transfer of title to the buyer is a matter of intention between the parties.

8. *Same; Action for Price; Set-Off and Counter Claim.*—Where goods are lost through the negligence of the seller while in his possession, after title has passed, the buyer when sued for the purchase price can defend by plea of set-off and counter claim for damages against the seller for breach of duty.

[Cook & Laurie Contracting Co. v. Bell.]

9. *Same; Plea; Sufficiency.*—Where the action was by the seller for the price of the cement, pleas by the buyer that the sale was never executed, that the seller had not made a delivery or tender of delivery in accordance with the terms of the contract, the price was due and payable only upon such delivery or tender, that on account of the seller's negligence in not repairing a roof or notifying the buyer of its condition, the cement was injured, and that the buyer offered to take and pay for the part not injured, did not tender the issue of the seller's negligence, and was not sufficient as pleas of set-off.

10. *Same; Instructions.*—Where the 2nd count claimed the principal sum, with interest from a certain day, but the undisputed evidence showed that the principal sum was not due until a day later. an instruction to find for plaintiff as to the 2nd count was not erroneous as it could not be construed to authorize a finding for the amount claimed under the 2nd count.

11. *Same; Evidence.*—The evidence examined and held sufficient to sustain a verdict for the plaintiff.

12. *Bailment; Care of Property; Goods in Possession of Seller After Transfer of Title.*—Where title to goods have passed and they remain in the custody of the seller, he is presumptively a mere bailee and liable for their safe keeping and delivery as a bailee.

13. *Same; Loss of Property; Action by Bailor.*—Where the buyer has paid the purchase price of the goods, title to which has passed to him, and they are afterwards injured or destroyed through the negligence of the seller acting as bailee, the buyer may recover the purchase price, or the amount of the value of his property. or the injury thereto.

14. *Account; Accounts Stated; Action.*—To entitle a party to recovery upon an account stated, he must show a fixed and certain sum to be due; his action in such case not being founded on the original liability, but on the admission of defendant in the nature of a new promise, that a certain sum is due.

15. *Same.*—Where a buyer acknowledges the receipt of an account for goods sold and set apart by him, and unconditionally promises in writing to pay the amount claimed as a purchase price, the obligation becomes as to him an account stated.

16. *Pleading; Prolixity.*—Under sections 5321, and 5322, a plea containing about 700 words, embodying much useless and irrelevant matter, was properly stricken on motion, it appearing that its material substance might have been stated in less than one-quarter of the words used.

17. *Charge of Court; Misleading.*—If an instruction has any tendency to mislead the jury to a party's prejudice it becomes his duty to request an explanatory instruction.

18. *Appeal and Error; Harmless Error; Evidence.*—Where the difference in terms showing payment on or before a certain date, are so slight as here the exclusion of evidence relative thereto cannot be said to be harmful.

19. *Same; Review; Correction.*—Under section 2891, Code 1907. error in the computation of interest cannot be corrected by the ap-

pellate court, as such section applies to judgments and not to verdicts.

20. *New Trial; Reversal; Remittitur.*—Where the successful party, upon notice of the claim that the verdict is excessive in amount, offers to remit the excess as it may be ascertained by the court, a verdict, the amount of which is not supported by the evidence, will not be set aside if it can be justly avoided.

21. *Same; Assignment; Amount.*—On a motion to set aside a verdict a ground that the verdict is contrary to the evidence is not sufficient to challenge the verdict as excessive in amount.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM H. THOMAS.

Action by William A. Bell against the Cook & Laurie Contracting Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Plaintiff sued defendant for the purchase price for 2,000 barrels of cement. The complaint is in general assumpsit, and contains two counts declaring on simple account and account stated, and one count for the price of merchandise sold to defendant on December 19, 1908.

Defendant pleaded the general issue, and also four special pleas. Pleas 2 avers that the claim sued on arose out of an executory contract of sale, by the terms of which the title to the cement, the subject of the suit, did not pass, and was not to pass, to the defendant until delivered and paid for. The substance of pleas 3, 4, and 5 is that plaintiff's assignor had on hand about 10,000 barrels of cement in bulk, and agreed to reserve for defendant for future delivery 2,000 barrels thereof from this mass; that this specified quantity was not then separated from the greater mass, and that the title thereto did not pass to defendant, and there was no agreement or expectation that it should pass until the delivery to defendant at a specified later time; that this delivery was to be made to defendant at the warehouse where the cement then was, as defendant needed it for

construction work, and that defendant was to receive any pay for it when the cement plant was transferred by its then owners to a new company to be soon organized; that this event occurred on May 24, 1909, at which time the cement reserved for defendant under said contract was, in a greatly damaged condition owing to exposure to rain from a damaged roof; that this damage to the roof above the cement occurred on January 29, 1909, and that about half of the cement was ruined by rains during February following, the roof not having been repaired; and that on May 24, 1909, plaintiff's assignor did not have on hand 2,000 barrels of merchantable cement. Plea 3 avers, also, that plaintiff's assignor did not at that time tender to defendant that amount of such cement.

Plea 5 avers, also, that plaintiff's assignor was negligent in permitting the rain to injure the cement, in that he did not repair the roof, nor notify defendant of its condition; that defendant offered to take and pay for such portion of the cement as was good, which offer was refused; and that defendant never received any cement or other thing of value, and does not owe plaintiff or his assignor any sum by account or otherwise.

The following are written charges given the plaintiff:

(1) "The court charges the jury that if they believe from the evidence that it was agreed between George Laurie and P. H. Moore that the 2,000 barrels of cement should be delivered to the defendant in the stockhouse of the plant at Spocari, and if they further believe from the evidence that Moore then separated 2,000 barrels of merchantable cement, suitable for construction work, from the mass of cement on hand, according to the terms of the contract, and sacked and stored same in bins in said stockhouse, and fastened the doors of said bins, and marked the same so as to

designate the cement therein as cement for the defendant, such separation and storing in said bin is a sufficient delivery."

(2) "The court charges the jury that, if they believe from the evidence that prior to the 23d day of January, 1909, the sale of 2,000 barrels of cement by plaintiff's assignor, through P. H. Moore, to the defendant, was consummated, and that the time and price of payment were agreed upon, and nothing remained to be done by the seller, except to deliver the cement, and if they further believe from the evidence that it was agreed between the defendant, through George Laurie, and the said Moore that the said cement should be delivered to defendant at the stockhouse of the plant at Spocari, and that said Moore than separated 2,000 barrels of merchantable cement, suitable for construction work, from the mass of cement on hand, according to the terms of the contract, and stacked and stored same, and stored it in the building of said stockhouse, and marked said bin so as to designate the cement therein as the cement of the defendant, such separation and storing was a sufficient delivery of the cement, and upon such delivery the title to the cement passed to the defendant, they should find for the plaintiff, less such an amount as the evidence shows was credited to the defendant's account by the said Moore, with interest."

(3) "The court charges the jury that if they believe from the evidence that the cement became the property of the defendant at the time it was stored in the bins in the stockhouse at Spocari, and if they further believe from the evidence that the said cement was merchantable and suitable for construction work at the time it was so stored, then you should find for the plaintiff for the amount sued for, if you further believe that the amount sued for does not exceed the agreed price, less

the credit to which the defendant is entitled for payments on account."

(4) "The court charges the jury that, if they believe from the evidence that the sale of the cement was complete, and the title to said cement passed to defendant at the time said cement was stored in the bins at the stockhouse at Spocari, then the risk of loss or damage to the cement was on the defendant from and after that time."

(5) "The court charges the jury that, if they believe from the evidence that the sale of cement was completed prior to the receipt by defendant of the statement of account accompanying the letter of P. H. Moore, general manager, dated January 23, 1909, and that after receipt of said statement the defendant promised to pay the amount stated in said statement or account, they should find for the plaintiff under the second count of the complaint."

(6) "The court charges the jury that, unless there is an agreement to the contrary between the parties to a sale of personal property or goods, the title passes ordinarily when the terms of price and payment are agreed on, and the goods are delivered to the purchaser, and after title passes to the buyer the risk of loss is on the buyer."

There was judgment for plaintiff, W. A. Bell, in the sum of $2,449.53, as against the defendant, the Cook & Laurie Contracting Company.

ROBERT L. HARMON, for appellant. The court erred in sustaining motion to strike defendant's plea 3.— *Brooks v. Continental I. Co.*, 125 Ala. 614. The court erred in permitting it to be shown that Laurie dictated the letter and that in dictating it, he used the words "on or" preceding the word "before," and that by mistake or omission the words "on or" were omitted.—

17 Cyc. 741, notes 6 and 9; *Hart v. Sharpton*, 124 Ala. 644; *Cowan v. Sapp*, 74 Ala. 44. The giving of charge 5 for plaintiff was error.—*James v. Benjamin*, 72 Ala. 185; 136 U. S. 268. Under the evidence until the organization of the new company, the time for payment would never arrive, and the transaction would never be a completed or executed sale.—*Austil v. Hieryonymous*, 124 Ala. 376; 35 Cyc. 111. The stuff was in bulk, and the sale of 2,000 barrels to be taken out of that lot did not pass title to any of it.—*Worten v. Stone*, 82 Ala. 311; *Mason v. Ala. I. Co.*, 73 Ala. 274; *Mobile S. Bank v. Frye*, 69 Ala. 348; 75 Ala. 473; 88 Ala. 507. The transaction was to be a cash transaction, and the separation from the bulk did not pass title.—6 A. & E. Enc. of Law, 456; *Shines v. Steiner*, 76 Ala. 458. Counsel discuss other matters asigned as error, but without further citation of authority.

JONES, FOSTER & FIELDS, for appellee. There was no error in striking plea 3, as it was prolix, and its substance was fully covered by other pleas.—*Ala. S. & W. Co. v. Thomas*, 52 South. 75; *Meyer Bros. Drug Co. v. Pucket*, 139 Ala. 331. Laurie's testimony as to the letter even if error was not injurious.—*So. C. & F. Co. v. Jennings*, 137 Ala. 247; *Kramer v. Compton*, 52 South. 351. If charge 2 given for plaintiff was misleading, it was the duty of defendant to request explanatory instructions, and failing to do so they cannot complain.—2 Mayf. 564. A charge is not abstract, when there is any evidence tending to support its hypothesis.—*Jones v. Fort*, 36 Ala. 449. Whether a sale becomes executed and passes title to property is usually determined by the intention of the party, and this is always a question for the jury under the facts as they exist in the particular case.—*Weeden v. Clark*, 94 Ala.

[Cook & Laurie Contracting Co. v. Bell.]

505; 35 Cyc. 123, 122; 24 A. & E. Enc. of Law, 1047-1049. The contract was an executed contract of sale, and defendants were bound by it.—*Magee v. Billingsly,* 3 Ala. 695; 66 U. S. 476; 24 A. & E. Enc. of Law, 1058, 1073. Section 2891 applies only to verdicts and not to judgments, and if there was an error in the verdict rendered because of the amount of interest, this court cannot correct it and will not set aside the verdict because thereof.—*McArthur v. Dane,* 61 Ala. 539; s. c. 57 Ala. 448; *Ramey v. Groc. Co.,* 108 Ala. 476. Counsel, however, offer in brief to remit any excessive interest charges with the request to this court to correct any error in the verdict.

SOMERVILLE, J.—On December 19, 1908, after some preliminary correspondence on the subject, a contract was made between E. P. Benjamin, as trustee, and the defendant company, for the sale by the former to the latter of 2,000 barrels of Portland cement. Plaintiff's witness, P. H. Moore, who represented the vendor in the transaction, testified: That the vendor had on hand at the date of the sale about 5,000 barrels of cement lying in bulk in his bins. That it was agreed that the 2,000 barrels sold to defendant out of this stock on hand should be sacked and stacked in the vendor's bins at his plant; and that the agreed price, $1.10 per barrel, should be paid on or before the transfer of the cement plant by Benjamin to a new company in process of formation, which event, it was mutually contemplated, would probably occur about January 11, 1909. That there was no specific agreement as to the time of delivery by the vendor or acceptance by the vendee, nor as to the place of delivery, except defendant's instruction to leave the cement in the bins. That witness then told defendant's purchasing agent that

40—177

he would sack it up and send him a bill when sacked. That, pursuant to this agreement, the vendor sacked 2,000 barrels of the said stock, stored the sacks in several bins, nailed up the doors thereto and marked the doors with the vendee's name and the number of barrels in each bin. That, as soon as this was done, witness wrote and mailed the following letter, accompanied by the bill and sketch referred to therein: "Jan. 23, 1909. Geo. Laurie, Esq., General manager, Cook & Laurie Contracting Co., Montgomery, Alabama. Dear Sir: I am inclosing herewith bill covering the 2,000 barrels of cement sold you when you were last over here. I am also inclosing you a sketch of the stockhouse showing quantities of cement and in which bins stored. This cement has all been sacked and is stacked in the various bins, and inside of each bin door there is a memorandum showing the number of rows and number of sacks in a row, so that your men can check the count as they take the cement out. Yours very truly, P. H. Moore, General Manager." That witness received in reply the following letter: "Mr. P. H. Moore, Mgr., Spocari, Ala. Dear Sir: We received 2,000 bbls. cement at Spocari. We will remit for this cement $2,200.00 before the transfer of the plant is made to the new company, which we presume will be soon. Yours truly, Cook & Laurie Contracting Co., by George Laurie, G. M." That between May 17 and November 2, 1909, witness wrote some seven or eight letters to defendant, requesting payment for the cement, to which defendant never made any reply whatever. Witness further stated that the cement sacked and stored for defendant was good merchantable cement, and that it had never been paid for. It appears, without dispute, that the contemplated transfer of the cement plant actually occurred on May 24, 1909. Plain-

tiff sues as the assignee of E. P. Benjamin, as trustee; the assignment being proven and not disputed.

Defendant's witness, George Laurie, testified as to the terms of the contract of sale, and stated that nothing was said or agreed upon as to separating or sacking and storing the cement purchased by him for defendant; and that payment and delivery were to be made concurrently when the transfer of the plant should be made. In other respects, his version of the contract does not differ materially from that of Moore.

The point to the controversy lies in the fact that about January 30, 1909, a severe windstorm damaged the roof of the stockhouse over the bins containing the cement in question; and this being followed by a series of heavy rains in the months of February, March, April and May, 1909, the cement was in large part ruined by the leakage of water through the damaged roof, so that, defendant claims, on May 24, 1909 (the day for delivery and acceptance), the vendor did not and could not offer to fulfill the contract of sale. In short, defendant's contention is that the title to the cement never did pass to defendant, and, there having been no tender by the vendor to defendant at or after the agreed date of 2,000 barrels of merchantable cement, defendant never became liable at all on the contract.

Plaintiff's contention, on the other hand, is that the separation, storing, and marking of the cement, pursuant to Moore's version of the contract, was such delivery as to then pass the title to the vendee and place on it the risk of loss or injury thereto; and that this is especially true in view of the vendee's subsequent asset to that procedure and implied aceptance of that mode of delivery, as evidenced by its letter of February 4, 1909.

The principles of law applicable to the facts above stated are quite well settled. According to Moore's statement of the terms of the contract of sale as made on December 19, 1908, every element of a complete sale was present, except one, viz., the identification of the subject-matter by separation from the mass of cement of which it formed a part. Had this separation been then and concurrently effected, there being no agreement, express or implied, to the contrary, and the sale not being for cash on delivery, the title would have then passed to the vendee by force of the contract alone, notwithstanding the postponement of delivery and the uncertainty as to when the specified time for payment might arrive.—*Magee v. Billingsley,* 3 Ala. 679.

The authorities hold that, in the case of a contract for the sale of a part of a known and definite mass in the ·possession of the vendor, the whole mass being of the same kind, quality, and value, the agreement becomes an executed sale, and the title passes to the vendee as soon as his portion is separated from the mass and identified as such.—35 Cyc. pp. 281, 292, 293; Benj. on Sales (6th Am. Ed.) 608; *Magee v. Billingsley,* 3 Ala. 679, 695; *Screws v. Roach,* 22 Ala. 675; *Browning v. Hamilton,* 42 Ala. 484, 486; *Darden v. Lovelace,* 52 Ala. 289; *Block v. Maas,* 65 Ala. 211, 213; *Mobile Sav. Bank v. Fry,* 69 Ala. 348; *Frank v. Myers,* 97 Ala. 437, 442, 11 South. 832; *Fry v. Mobile Sav. Bank,* 75 Ala. 473; *Warten v. Strane,* 82 Ala. 311, 8 South. 231; *Gresham v. Bryan,* 103 Ala. 629, 15 South. 849; *McFadden v. Henderson,* 128 Ala. 221, 29 South. 640.

This assumes that by· the terms of the contract, express or implied, the vendor is to make the selection; and that he has done so pursuant to that understanding. In the absence of such prearrangement, or in case of failure to fully conform thereto, the vendor's mere

act of separation is not sufficient to pass title to the vendee; for there is no efficient appropriation of the goods to the contract. In such case the vendee must be informed of the separation, and must assent to the appropriation, or else the title does not pass.—35 Cyc. pp. 296-298; *Merchants' Nat. Bank v. Bangs,* 102 Mass. 291; *Hoover v. Maher,* 51 Minn. 269, 53 N. W. 646; *Gardner v. Lane,* 12 Allen (Mass.) 39; *Colorado, etc., Co. v. Godding,* 20 Colo. 249, 38 Pac. 58; *New England, etc., Co. v. Standard, etc., Co.,* 165 Mass. 328, 43 N. E. 112, 52 Am. St. Rep. 516; *Stanford v. McGill,* 6 N. D. 536, 72 N. W. 938, 38 L. R. A. 760.

These are implications of the law, in the absence of countervailing stipulations, or circumstances from which a contrary intention may be implied. The execution of a contract of sale by the transfer of title to the vendee is a matter of intention between the parties, and whether there was such an intention is, in general, a question of fact.—*Magee v. Billingsley,* 3 Ala. 695; *Weedon v. Clark,* 94 Ala. 505, 10 South. 307.

Under the principles above stated, if Moore's version of the contract of sale is true, then the facts that the vendor separated 2,000 barrels of cement from the stock on hand, sacked it, and placed it in the bins according to agreement, marked it with the vendee's name, and sent him a bill therefor, show prima facie that title passed to the vendee. And, even had there been no prearrangement as to sacking the cement and placing it in the bins for the vendee, the vendee's letter, written on February 4, 1909, acknowledging receipt of the bill and the sketch showing the location of the cement in certain designated bins, may well supply the inference of assent thereto, and even of acceptance of that act as a constructive delivery of the cement. "The selection of the goods by one party and the adoption of that act

by the other converts that which was before a mere agreement to sell into an actual sale, and the property thereby passes."—24 Am. & Eng. Ency. Law, p. 1058.

It is thoroughly well settled that the risk of loss follows the title, if not otherwise stipulated by the parties.—*Magee v. Billingsley,* 3 Ala. 679, 693; *Foley v. Felrath,* 98 Ala. 176, 13 South. 485, 39 Am. St. Rep. 39. That is to say, if the title has passed to the vendee, injury to or destruction of the property thereafter does not affect the rights of the vendor as such, unless the contract imposes on him the obligation to safely deliver the property to the vendee as a condition precedent to the latter's obligation to accept or pay for it. If the title has passed and the property remains in the custody of the vendor, he is presumptively a mere bailee and liable for its safe-keeping and delivery in accordance with the general principles that govern bailments. If the vendee has paid .the purchase price, and thereafter the property is injured or destroyed through the negligence of the vendor, acting as bailee, the vendee has his action, not to recover the purchase price, but to recover the amount of the value of his property or of the injury thereto. And so, if in such case he is sued for the purchase price, he can defeat its recovery only by a plea of counterclaim and set-off of damages against the bailee for his breach of duty. These results follow inevitably from the premises first stated.

The gist of defendant's defensive pleas is that the sale was never executed, and that plaintiff never made delivery, nor tender of delivery, to defendant, of 2,000 barrels of merchantable cement in accordance with the terms of the contract, and that the price was due and payable only upon such delivery or tender. Several of these pleas contain allegations calculated apparently to place the blame for the greatly damaged condition

of the cement upon the vendor, by reason of his negligent failure to protect it from the weather; but they are in no sense pleas of set-off, and do not tender the issue of a bailee's negligence, with which theory, indeed, their general averments are wholly inconsistent.

Under the third count (for goods sold), the material issues that went to the jury were (1) whether there was an appropriation of the cement in question by the vendor to the contract of purchase in accordance with its terms, so as to pass title to the vendee, the cement being at such time in good and merchantable condition; and (2) whether there was, in any event, a separation and delivery of the cement in such condition to the vendee at the vendor's bins, accepted by the vendee as a delivery after notice thereof. If the jury found affirmatively on either of these issues, it was their duty to return a verdict for the plaintiff on the third count. Otherwise their verdict should have been for the defendant, since there is no contention that the plaintiff could recover on any other phase of the evidence. These issues were submitted to the jury, and charges 1, 2, 3, 4, and 6, given at the instance of plaintiff, correctly instructed them in accordance with the principles above enunciated.

Charge 5, given at the instance of plaintiff, correctly instructed the jury as to plaintiff's right to recover on the second count, which declares on a stated account. "When an account is rendered showing the balance due, and the debtor retains it, without making objection within a reasonable time, his failure or omission to object is presumptively construed as an admission of its correctness. * * * To entitle a party to recover upon an account stated, he must show a fixed and certain sum to be due though he need not precisely prove the sum laid in his complaint. In such case the action

is not founded on the original liability, but on the defendant's admission that a definite sum is due in the nature of a new promise, express or implied."—*Ware v. Manning,* 86 Ala. 238, 5 South. 682; *Loventhal v. Morris,* 103 Ala. 332, 15 South. 672. Here there was an acknowledgment of the account, and a specific and unconditional promise, in writing, to pay the amount claimed as the purchase price for cement sold to the promisor, and set aside exclusively for him. This promise to pay made the obligation an account stated, which the promisor could not impeach except for fraud or mistake.—*Ware v. Manning,* 86 Ala. 238, 244, 5 South. 682; *Sloan v. Guice,* 77 Ala. 394; *Kilpatrick v. Henson,* 81 Ala. 464, 1 South. 188. It is not claimed, and the evidence does not permit the inference, that this account or the promise to pay it was infected with either fraud or mistake. An immaterial clerical mistake in the letter of promise will be hereafter referred to.

It is insisted, however, that the charge is erroneous, in that it hypothetically authorizes the jury "to find for the plaintiff under the second count," which claims the principal sum, with interest from March 1, 1909; whereas the evidence shows, without dispute, that the principal sum was not due until May 24, 1909, and it clearly · appears that this excess of interest actually went into the verdict and judgment. This charge did not authorize the jury to find for the plaintiff for the amount *claimed* by the second count, and it cannot be so construed. If it had any tendency to mislead the jury in this respect (as may have been the case), defendant should have requested an explanatory charge.

Defendant's letter to Moore, of the date of February 4, 1909, is as follows: "We received your statement and sketch showing location of the 2,000 bbls. of cement

at Spocari. We will remit for this cement $2,200.00 before the transfer of the plant is made to the new company, which we presume will be soon." This letter purports to be signed by "George Laurie, by G. M.," and its contents were dictated by Laurie to the clerk who wrote it. Defendant offered to prove by Laurie that the words actually dictated by him were "on or before the transfer of the plant, etc.;" the words "on or" being inadvertently omitted by the clerk in writing the letter. The trial court sustained plaintiff's objection to the offered evidence. If there was any error in this ruling, which we do not decide, it cannot, in any aspect of the case, be regarded as prejudicial to defendant. It was shown by plaintiff's evidence, as well as by defendant's, that the purchase price was payable "on or before" the occurrence specified, and there was no issue upon that undisputed fact. The suit was brought long after May 24, 1909, the date of the occurrence contemplated, and the time when defendant's obligation to pay matured, if at all. Obviously, the difference in the options enjoyed by defendant under either phraseology would be but a fraction of a minute of time, and, for the purposes of this case, at least, this difference is negligible. "De minimis non curat lex." Nor would the amendment, if allowed, have been in any way material to any of the issues upon which the case was tried and determined. It could not have affected the relations of the parties, nor strengthened or weakened any of the implications of law or inferences of fact arising out of any material part of the evidence. Hence we hold that defendant cannot complain of the ruling as reversible error.

On motion of plaintiff, the trial court struck from the file defendant's special plea numbered 3; the grounds of the motion being that the plea is merely the

general issue; that it is frivolous; and that it is unduly prolix. Section 5321 of the Code requires that "all pleadings must be as brief as is consistent with perspicuity;" and section 5322 provides that "if any pleading is unnecessarily prolix, irrelevant, or frivolous, or unnecessarily repeated, it may be stricken out." The plea in question contains about 700 words, and covers two typewritten pages of transcript paper. It embodies a great deal of irrelevant and useless matter, and sets out mere matters of evidence in extenso. Its material substance might well have been stated in less than one-fourth of the space used. It violates the fundamental maxims of pleading, and falls clearly within the ban of the statute. Its life was forfeited, and the judicial guillotine was justly applied. Several other of defendant's pleas were equally offensive in this respect, and did not merit the leniency which seems to have spared them.

The trial court did not err in overruling defendant's motion for a new trial. The verdict of the jury was not contrary to the charges of the court, and was amply supported by the evidence.

It is insisted, however, that the verdict should have been set aside and a new trial ordered, because the amount of a verdict was excessive. It does, indeed, quite clearly appear, as appellee concedes, that the verdict awarded to plaintiff the principal sum due and interest from March 1, 1909; while the evidence showed, without dispute, that the principal sum was not due until May 24, 1909, from which date the interest should have been computed. The result is that the verdict and judgment give to plaintiff $41.90 more than he was entitled to under the evidence. The correction of errors of this sort cannot be effected under section 2891 of the Code, which, as construed by this court, applies

[Cook & Laurie Contracting Co. v. Bell.]

only to judgments, not verdicts, and to such errors and mistakes as may be corrected from matter apparent on the record.

Where the amount of a verdict is not supported by the evidence, it can be corrected only by setting it aside on proper and timely motion by the party aggrieved. But courts do not favor the setting aside of verdicts on this ground if it can be justly avoided, and they will not do so if the beneficiary of the verdict, upon notice of the claim that it is excessive in amount, offers to remit the excess as it may be ascertained and determined by the court. "Remittiturs," it is said, "are favored by the courts in proper cases, for the promotion of justice and the ending of litigation."—*Richardson v. Birmingham, etc., Co.,* 116 Ala. 381, 22 South. 478; *A. G. S. R. R. Co. v. Roberts,* 113 Tenn. 488, 82 S. W. 314, 67 L. R. A. 495.

The application of this practice is especially simple and satisfactory in a case like the present, where the excess is precisely calculable and separable from the gross amount awarded. To set aside a verdict in the lower court, or to reverse a judgment on appeal because of such an error, in the face of the plaintiff's offer to remit the excess, would be a reproach to judicial procedure. If the practice of remittitur is to be made available, it is necessary that the trial court should be properly informed of this complaint against the verdict; and hence the motion to set aside should plainly challenge it as being excessive in amount. The question is not properly raised by an assignment merely that the verdict is contrary to the evidence; and hence the trial court cannot be put in error for overruling the motion.

However, appellee offers in this court to remit such an amount as may cure the manifest error of the verdict, which amount we find to be $41.90. The judgment

will therefore be affirmed, and a remittitur duly entered in the sum above specified.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.