# Cassels *v.* Alabama City, G. & A. Ry. Co.

### Assumpsit.

(Decided December 7, 1916.   73 South. 494.)

1. **Frauds, Statute of; Promise to Pay Debt of Another; Validity.**— Where a corporation was indebted to plaintiff for electric current, motor rent and other things and defendant was interested in the corporation and at defendant's request plaintiff moved the motor and installed it in defendant's new mill on defendant's promise to pay the debt of the old corporation in installments, such debt became existent as a condition precedent to the removal and installation of the motor in the new mill.

2. **Appeal and Error; Determination; Remittitur.**—Where the duty was upon defendant to return the motor in condition as good as when installed but the verdict erroneously included repairs promised by plaintiff and such amounts were precisely ascertainable, the court on appeal may properly modify the judgment where plaintiff consents to the remittitur.

3. **Assumpsit; Electrical Current; Evidence.**—Where the action was assumpsit to recover the amount due for electric current and motor rent removed from one mill to another, testimony as to the failure of the new mill to run at certain times was properly excluded where such failure was not shown to be due to any fault of the plaintiff or to non-compliance on his part of his duty to furnish electric current.

4. **Electricity; Current; Contract.**—Where the written contract governed charges for electrical current furnished and provided for the measurement of current and for the determination of the reasonableness of the measurement if the meter charges appeared to be excessive, the method prescribed by the contract is the only method that may be used to dispute the meter and compute the charges.

5. **Same; Evidence.**—Where the evidence for the plaintiff tended to show that certain pulley arrangements of the defendant increased the amount of the current necessary to drive the machinery the defendant cannot be permitted to show that those pulleys were afterwards reversed and the charge for current decreased, although such testimony might have been competent if it had been shown that the pulleys were so placed in the first instance by the plaintiff, or that it was not defendant's duty to rearrange them but was the duty of the plaintiff.

6. **Same; Contract; Termination.**—If defendant promised to pay the old debt and the amount thereof became due, his termination of the contract for

[Cassels v. Alabama City, G. & A. Ry. Co.]

current at the new mill did not relieve him of the obligation to pay the old debt.

7. **Same; Instructions.**—Where plaintiff rented a motor from the defendant under a contract providing that the motor should be returned in as good condition as when installed, natural wear and tear excepted, a charge asserting that the burden was on plaintiff to prove how a starter box on such motor was destroyed, and that if the jury cannot say how such starter box was destroyed, from the evidence, they cannot charge damages for repairs to the defendant was incomplete and properly refused.

8. **Appeal and Error; Harmless Error; Instructions.**—Reversible error cannot be predicated upon instructions as to certain items of plaintiff's claim, where on appeal those items were eliminated by remittitur.

9. **Electricity; Current; Charges.**—Where electrical current was furnished to defendant and under the contract he was bound to keep the motor in good condition defendant was liable for excess current used due to his failure to keep the motor in good condition.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Assumpsit by the Alabama City, Gadsden & Attalla Railway Company against C. G. Cassels. Judgment for plaintiff, and defendant appeals. Corrected and affirmed.

The evidence referred to in assignments 5, 9, 17, 18, 38, and 39, sufficiently appears. The following is the oral charge of the court referred to in assignments 59 and 60:

And then, if you further believe from the evidence, gentlemen of the jury, that this defendant assumed the debt of Cassels' Mills, he would be liable for the amount of that debt. If the agreement was between the parties that plaintiff refused to move the motor from Cassels' Mills to defendant's mill, until that debt (Cassels' Mills debt) was assumed, and you believe that, then this defendant would be liable for the amount of that indebtedness.

The following charges were refused to defendant:

(B) If the jury believe all the evidence in this case, they cannot find against defendant as to the amount of $312.27, the amount of the old indebtedness due plaintiff by Cassels' Mills.

(P) Same as B.

(S) If the jury reasonably find from the evidence that the amount of the old indebtedness by Cassels' Mills for rents of the motor for 12 months, under the contract between plaintiff and defendant, and defendant terminated said contract by written notice, as provided for in said contract, then this would relieve defendant from further liability to plaintiff by reason of said indebtedness of Cassels' Mills to plaintiff.

(Q) The court charges the jury that the burden of proof is on plaintiff to convince the jury reasonably from the evidence as to how the starter box was destroyed, and, if from the evidence the jury are unable to say reasonably from the evidence as to how the starter box was destroyed, they cannot assess the damages for repairing the same to defendant.

The following charge was given for the plaintiff:

(3) The court charges the jury that, if they find that plaintiff put in the starting box in good condition, then, under the contract, defendant was under the duty of keeping it in good repair and condition, and if, for any cause, it got out of repair after it was put in, and thereby produced an excessive use of electricity, defendant would be liable for such electricity so used by it.

CULLI & MARTIN, for appellant.   GOODHUE & BRINDLEY, for appellee.

THOMAS, J.—The several counts of the complaint upon which the trial was had were, the common counts, and a count claiming for the breach of a contract to pay motor rent. The defendant pleaded the general issue, payment, and set-off.

Appellant's assignments of error numbered from 5 to 9, inclusive, and 17, 18, 38, and 39, challenge rulings on admission of the evidence of witnesses Schuler and Cassels, on the ground, as is insisted, that this evidence contradicted the written contract in evidence. Such was not its effect. It only tended to show that the plaintiff had previously furnished power to Cassels' Mills, a corporation, in which the defendant was interested; that it became indebted to plaintiff for such power; and that defendant desired the motor from the old mill to be removed to the new mill, to be operated by the defendant and others.

Witness Schuler's statement of the agreement as to payments on this old account by the defendant is set out in the record as follows: "Witness further stated, without being questioned further, took the property of Charlie Cassels and start in operation there, to run the new mill that they had purchased and installed or were going to install at that place. We wanted the old account paid first, and they hesitated about paying it. * * * So we got the motor later without bringing that question to an issue at that time, because we thought there was some possibility of the motor being held in the old plant. * * * Instead of

moving it to the new place, we moved it down to our plant and told the Messrs. Cassels that we wouldn't consider installing our motor in the new plant until the old account was paid. It remained down at our plant for some little time, and finally they agreed— Mr. Charlie Cassels agreed to pay the old account, and, upon his agreeing to do so, we * * * transferred the motor from our plant and installed it in the new place, and then they wanted to know if we would not divide up the payments of the old account, distribute it throughout a period so as to make the payments come easier, and that we later agreed to do, so that the amount was divided into a certain number of payments and incorporated, the contract that was entered into with and signed by, Charlie Cassels, and these payments extended over a period of about a year, so much a month and included the normal amount charged as rental for the motor and light for the plant. My recollection is that it was $15, $10 a month being for the lights furnished and the balance, $5, for motor rent, etc."

(1) Under this evidence, there could be no question that, after the motor was so removed and installed in the new mill at the defendant's request, recovery could be had, based on this promise of the defendant to pay, though the written contract had never been entered into. By the terms of the contract, the dates of the payments were postponed so that the payments should mature as monthly installments. The debt became existent when the motor was removed by plaintiff at defendant's request, and the agreement to pay said old debt was entered into as a consideration precedent to the removal and installation of the motor in the new mill.—8 Cyc. 148; *Hall v. Tanner,* 91 Ala. 363, 8 South. 348. This is not in conflict with the rule declared in *Burroughs v. Pate,* 166 Ala. 223, 229, 51 South. 978.

There was no error in that part of the oral charge challenged in the fifty-ninth and sixtieth assignments of error.

Defendant's counsel insist that error was committed when the trial court admitted evidence of the price paid by plaintiff for the new starting box, and of the amount of freight charges therein. These objections and exceptions are covered by many assignments of error. In the case of *Jonas v. King,* 81 Ala. 285, 1 South. 591, the holding was that the plaintiff can recover under the common counts, notwithstanding the fact that the evidence shows that the contract has been fully executed, with no duty remaining but that of the defendant to pay the money.—*Maas,*

*et al. v. Montgomery Iron Works,* 88 Ala. 323, 6 South. 701; *Merrill v. Worthington,* 155 Ala. 281, 46 South. 477.

(2) Notwithstanding the rent contract between the parties imposed upon the defendant the duty of returning the motor to the company in condition as good as when installed, usual wear and tear excepted, under the issues presented we are of opinion that the judgment should be reduced by the aggregate amount of $157.55, comprising the two items in the account, $148.75, the price paid by the plaintiff for a new starting box, and the $8.80 freight thereon to Gadsden. The amounts of these items are clearly and definitely fixed by the evidence. Appellee insists in its brief, however, that the rulings on the admission of evidence, and the several charges of the court, as to these items, were without error; but with good judgment consents that, if there was error as to the two items in question, a proper remittitur may be made by this court. This course is supported by recent decisions of this court. In *Cook & Laurie v. Bell,* 177 Ala. 618, 635, 59 South. 273, 279, a case in assumpsit, Mr. Justice SOMERVILLE discusses the question of remittitur as follows: " 'Remittiturs,' it is said, 'are favored by the courts in proper cases, for the promotion of justice and the ending of litigation.'— *Richardson v. Birmingham, etc., Co.,* 116 Ala. 381, 22 South. 478; *A. G. S. R. R. Co. v. Roberts,* 113 Tenn. 488, 82 S. W. 314, 67 L. R. A. 495 [3 Ann. Cas. 937]. The application of this practice is especially simple and satisfactory in a case like the present, where the excess is precisely calculable and separable from the gross amount awarded. To set aside a verdict in the lower court, or to reverse a judgment on appeal because of such an error, in the face of the plaintiff's offer to remit the excess, would be a reproach to judicial procedure. * * * However, appellee offers in this court to remit such an amount as may cure the manifest error of the verdict, which amount we find to be $41.90. The judgment will therefore be affirmed, and a remittitur duly entered in the sum above specified."

In *Ex parte Steverson,* 177 Ala. 384, 389, 58 South. 992, 993, a case for damages for the creation of a nuisance, the act of 1917 (Acts 1911, p. 587) providing for remittitur in the Supreme Court or the Court of Appeals, because the judgment of the lower court is excessive, and there is no other ground of reversal, upon notice to and consent of appellee, was considered. The court said:

"At common law, as is provided in this statute preceding the proviso to which we have just referred, it is proper to accord the plaintiff, who has secured an excessive judgment, the option to remit a definite amount thereof, and thereby avert a new trial on that score.—*Kennon v. Gilmer*, 131 U. S. 22, 29, 30, 9 Sup. Ct. 696, 33 L. Ed. 110; 3 Cyc. pages 436, et seq.; 11 Rose's Notes U. S. Rep. pp. 771, 772. The same practice has been generally adopted by, and applied in, the appellate tribunals where the sole error found has been that the judgment was excessive.—Authorities supra."

In *Chicago R. Co. v. Seale* (Tex. Civ. App.), 89 S. W. 997, it was held that where, in an action for temporary injury to land, a recovery was erroneously permitted for an item of expense incurred in the restoration of the land to condition, without proof of the reasonableness of such expense, the error may be cured by the remittitur of "the greatest sum that the jury could, under the evidence, have found as damage" for such item of expense. In the case of *St. L., I. M. & S. Ry. Co. v. Brown*, 100 Ark. 107, 123, 140 S. W. 279, 285, the following language is used: "In fixing the amount that appellee will be permitted to recover, the court will not be careful to see that it shall be sufficient to compensate for the injury sustained, but rather that the amount required to be remitted shall be large enough to strip the verdict of the jury of any prejudicial elements, giving appellant the benefit of reasonable probabilities in respect to the amount of the recovery, and reduce the judgment to an amount clearly regarded as not excessive, in accordance with the views announced in *St. Louis, I. M. & S. Ry. Co. v. Adams*, 74 Ark. 326 [85 S. W. 768, 86 S. W. 287, 109 Am. St. Rep. 85]."—Sutherland on Damages, § 460; *Baxter v. Chicago & Northwestern Ry. Co.*, 104 Wis. 307, 80 N. W. 644; *Trow v. White Bear*, 78 Minn. 432, 80 N. W. 11117.

See, also, Gen. Acts 1915, p. 610.

(3) Assignments of error numbered from 41 to 50, inclusive, and 44, are based on the refusal of the court to allow the witness Coats to answer questions tending to show whether the mill was in operation on a designated date, and the relative sizes of the two mills. The failure of the new mill to run a designated number of hours on May 26th may have been due to other causes than lack of electric current or plaintiff's failure in respect to the delivery of same. Likewise, it was not competent to make a

comparison of the two mills. They were different in many respects. The objections and exceptions based on such comparisons sought to be instituted by defendant were properly disposed of by the trial court.

(4) A written contract existed between the parties, governing charges by plaintiff for electric current to be furnished defendant's mill; and it was therein provided that a meter should be used for the measurement of current so furnished, and was specified how, when meter charges appeared to be excessive, the question of the reasonableness thereof should be determined. If the contracting parties were unfortunate in their attempt to provide against excess meter charges for current, some other method of disputing the meter and computing the charges cannot be set up in lieu of the contract method.—*Abercrombie & Williams v. Vandiver*, 126 Ala. 513, 28 South. 491.

(5) Though plaintiff had shown that defendant's plan of certain pulley equipment in their new mill was such as to increase the current necessary in its operation, the defendant was not authorized to reply thereto by evidence showing that on July 6th these pulleys were reversed and that thereafter the charges for current were decreased. This testimony might have been competent had it been shown that the pulleys were so placed by the plaintiff in the first instance, or that it was not the duty of defendant to rearrange them, but that of the plaintiff.

(6) The exceptions to charges are embraced in assignments of error numbered 59, 60, 61, 62, 66, 67, 82, and 85. The contract covered the period from February, 1914, to February, 1915, inclusive, and the motor rent was to be paid in monthly installments of $54.69, of which $15 was for "the motor rent," and the balance, $39.69, for accrued motor rent and current used at the old mill. The suit was brought April 5, 1915, and trial was had November 22, 1915; therefore each of these deferred payments on the "old mill" account was due. The termination of the contract for electric current at the new mill, on September 9, 1915, did not relieve defendant of the obligation to pay plaintiff the several monthly installments of $39.69 on the old mill account assumed by defendant. The trial court correctly instructed the jury as to the motor rent proper, and the assumed indebtedness of the old mill account by defendant. There was no error in the refusal to give, at defendant's request, written charges B, P, and S.

[Copeland, et al. v. Pope.]

(7, 8) Charge Q, requested by the defendant, was properly refused because of its incompleteness as set out in the record. Moreover, if error there was, it is liminated by the remittitur here entered.

(9) The court correctly instructed the jury, in plaintiff's written charge No. 3, as to the account for electric current, though the excess dealt with in the charge was caused by usual wear and tear. It was defendant's duty to keep the motor in condition, as agreed on, and likewise to notify the plaintiff of its being out of repair, though caused by conditions not contracted against. Failing in this, the excess current so used would be an item of excuse for which the defendant must pay.

There are 85 assignments of error, and we have attempted to consider all those insisted on by counsel in their briefs.

From the evidence, it is clear that these items of the purchase and transportation of the new starting box, aggregating $157.55, are so separated from the other items of the account that they cannot have influenced the jury in their finding as to any other item on which the verdict is based. The judgment is therefore amended by a remittitur, duly entered, in the sum of $157.55, as hereinabove specified.—Gen. Acts 1915, p. 610. As so corrected, the judgment of the city court is affirmed.

Corrected and affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.