153 So.2d 240

Paul L. ASHURST et al.

v.

Samuel E. ROSSER et al.

3 Div. 983.

Supreme Court of Alabama.

May 9, 1963.

Ramon L. Farnell, Montgomery, for appellants.

Albert W. Copeland, Godbold, Hobbs & Copeland, Montgomery, for appellees.

LAWSON, Justice.

This suit was brought in the Circuit Court of Montgomery County by Samuel E. Rosser and wife, Blanche E. Rosser, against Paul L. Ashurst and wife, M. E. Ashurst. The complaint's single count claimed damages for breach of a contract. The defendants pleaded the general issue and the general issue in short by consent in the usual form. There was a jury verdict in favor of the plaintiffs in the sum of $1600. Judgment followed the verdict. After their motion for new trial was denied, the defendants appealed to this court.

On July 10, 1958, Samuel E. Rosser and Blanche B. Rosser, as Sellers, and Paul L. Ashurst and M. E. Ashurst, as Purchasers, executed a written agreement wherein the "Seller agreed to bargain and sell to Purchaser" a house and lot situate in the City of Montgomery. In parts here pertinent the agreement provided:

"2. The purchase price of said real estate shall be the sum of Four Thousand Five Hundred and no/100 ($4,-500.00) Dollars evidenced by a promissory note bearing even date herewith and the assumption of a mortgage indebtedness upon which there is due at the present time the sum of $14,594.90, said mortgage indebtedness being secured by a mortgage in favor of E. S. Watts & Co., Inc. dated October 28, 1955 and appearing of record in said Probate Office in Mortgage Book 806 at page 228. The aforesaid purchase price shall be payable as follows:

"Commencing on the first day of August, 1958, and continuing on the first day of each succeeding month thereafter through June 1, 1959, Purchaser shall pay to Sellers the sum of $151.00 Per Month of which sum Sellers shall pay such amount as shall be necessary to make the payments due under said mortgage, including the required deposits for taxes and insurance, and Sellers shall apply the sum of $50.00 per month on the indebtedness due Seller from Purchasers under said promissory note bearing even date herewith; and on July 1, 1959 the entire balance due under said promissory note shall be paid in full.

"3. Purchasers shall be entitled to possession of said property on August 1, 1958, and so long as Purchasers shall faithfully perform all undertakings and conditions of this agreement. * * *

"4. Sellers agree and bind themselves, their heirs and assigns, executors and administrators upon the full payment of the obligations described above and the full compliance with all the terms and conditions hereof, to execute and deliver unto Purchasers, their heirs and assigns a warranty deed free and clear of all encumbrances other than the aforesaid mortgage which Purchasers shall assume, and restrictions, easements and covenants of record. At the time said deed is delivered Sellers shall deliver an abstract of title showing good and merchantable title in them, subject to the aforesaid encumbrances, restrictions, easements and covenants, and shall affix the requisite revenue stamps to said deed.

*   *   *   *   *   *

"8. Purchasers agree that in the event they shall fail to pay or cause to be paid any installments due hereunder when the same shall become due or in the event of their failure to comply with any of the terms, agreements and undertakings hereof, then and in such event, Sellers shall have the right without notice to annul this agreement, and in such an event Purchasers shall become the tenants of Sellers and Sellers shall be entitled to immediate posses-

sion of said property and may take possession thereof and may eject Purchasers, all without notice of any kind, and shall retain all amounts paid hereunder and all improvements made upon said property as rent for the premises, it being hereby agreed that said payments and improvements, if any, shall be the rental value of the premises. In the event of such a re-entry upon the premises Purchasers hereby agree to pay any and all sums incurred by Sellers to place said property in substantially the same condition as at present.

"9. In the event it shall become necessary for the Sellers to employ an an attorney to enforce any right hereunder, Purchasers agree to pay a reasonable attorneys fee to Sellers."

Contemporaneously with the execution of the agreement from which we have quoted above, the Purchasers, Paul L. Ashurst and wife, M. R. Ashurst, executed a promissory note payable to the Sellers, Samuel E. Rosser and Wife, Blanche B. Rosser, in the principal sum of $4,500. In regard to payment, the note provided:

" * * * payment to be made in lawful money of the United States in the manner and form as follows: The principal sum of $4,500.00 with interest from date on the whole amount of said principal sum remaining from time to time unpaid at the rate of 6% per annum shall be payable in 11 monthly installments of $50.00 each commencing August 1, 1958, and continuing on the same day of each succeeding month thereafter and a final installment on July 1, 1959, of all remaining principal and interest."

The Ashursts went into possession of the house and lot on or about August 1, 1958. They paid the sum of $151 for the month of August, 1958, and the same sum for each month through July, 1959. The Ashursts vacated the premises on or about July 24, 1959, without making any other payment to the Rossers. Shortly after the Ashursts vacated the premises, the Rossers advertised the property for sale in a Montgomery paper. Being unable to effectuate a sale in that manner, the Rossers listed the property for sale with a real estate agent, who negotiated a sale to one Weldon, which was consummated on or about December 15, 1959.

This suit was brought by the Rossers in March, 1960, claiming damages in the sum of $2,500 from the Ashursts for breach of an agreement to purchase the suit property.

The only argued assignments of error relate to the action of the trial court in overruling the Ashursts' motion for a new trial.

It is first insisted that the trial court erred in overruling those grounds of the motion for new trial which took the point that the verdict was contrary to the great weight of the evidence.

The appellants' position, if we understand it correctly, is that the evidence shows that the instrument of July 10, 1958, is not an executory contract for the purchase and sale of the suit property, but is a lease with an option to purchase.

■ This court has made a distinction between (1) a sale of lands where the present conveyance thereof becomes the executed contract; and (2) an agreement to sell lands by a contract to be performed in the future and if fulfilled results in a sale; and (3) what is generally called an "option"—which is originally neither a sale nor an agreement to sell—a contract by which the owner of the property agrees with another that he will have the right to buy the property for a fixed and lawful consideration and within a certain time prescribed. Lauderdale Power Co. v. Perry, 202 Ala. 394, 80 So. 476, and cases cited.

The agreement here under consideration did not constitute a conveyance of the suit property. The question is whether it is an executory contract to purchase and sell or an option.

■ One of the essentials of an executory contract of purchase and sale of land is the obligation of the purchaser to buy and of the seller to sell. Burmeister v. Council Bluffs Inv. Co., 222 Iowa 66, 268 N.W. 188.

■ Under the terms of the agreement here under consideration, the Rossers are clearly obligated to sell. But there is no language in the agreement which specifically obligates the Ashursts to purchase. This creates a difficulty, but the absence of such a specific provision is not conclusive of the character of the agreement. McGuire v. Andre, 259 Ala. 109, 65 So.2d 185. In the case last cited we said:

"* * * There is strong authority for the holding, however, that the fact that the contract does not formally bind the party to make payment, is not regarded as conclusive of its character. In other words there need be no express agreement that the purchaser has agreed to buy, but where it appears from the contract that the intention was to consummate a sale, the absence of an express agreement to purchase does not limit the contract merely to one of option, but it will be held to be a contract of purchase and sale. 55 Am. Jur. § 30, pp. 500–501; Rafael Gutierrez Del Arroyo v. Graham, 227 U.S. 181, 33 C.St. 248, 57 L.Ed. 472; Asia Investment Co. v. Levin, 118 Wash. 620, 204 P. 808, 32 A.L.R. 578. * *" (259 Ala. 115, 65 So.2d 190.)

■■ It seems to us that a careful consideration of the terms of the agreement shows it to be one of purchase and sale and not an option. The agreement was signed by the Ashursts, who are referred to throughout as "Purchaser" or "Purchasers." This circumstance alone does not make the instrument a bilateral contract, but it is an indication that both parties intended to be bound by the terms and conditions of the contract. McGuire v. Andre, supra. Perhaps the most persuasive feature of the transaction is that the Ashursts undertook to bind themselves to pay the purchase price by the execution of the note which is referred to in the agreement. See Le Blanc v. Watson et al., 5 Cir., 13 F.2d 76, where the agreement there under consideration was in several respects similar to that here involved.

Paul Ashurst was called as a witness by the plaintiff and much is said in brief filed here on his behalf to the effect that his testimony, which stands uncontradicted in many respects, shows that it was his intention to enter into a lease and option contract rather than a contract to purchase and sell. He stated that while he read some parts of the agreement before executing it, he did not read it all and that before executing the agreement he inquired of the attorney who prepared the instrument at the instance of the Rossers as to what would happen in the event he was unable to go through with the purchase of the property. He stated that the attorney told him to read Paragraph 8 of the agreement and that upon reading that paragraph he was under the impression that there was no obligation on his part to purchase the suit property, but that if he could not on July 1, 1959, pay the amount due the Rossers on their equity in the property, he could abandon it, thereby losing the monies which he had paid to them, with the cost of the improvements which he might make.

Some of Ashurst's testimony is to the effect that there was a contemporaneous parol agreement which changed the effect of the written instrument.

■ It is a rule of law that in the interpretation of an instrument in writing, we are permitted to place ourselves in the situation of the contracting parties at the time of its execution, and to consider the occasion which gave rise to it, the relative positions of the parties, and the obvious design they intended to accomplish, but this rule cannot be so extended as to supplement the writing with provisions of a contemporaneous oral agreement which

**168**

changes its meaning. Tennessee & Coosa R. Co. v. East Alabama Ry. Co., 73 Ala. 426.

We have given careful consideration to the agreement and to the testimony of Mr. Ashurst. We cannot agree that the finding of the jury to the effect that Ashurst agreed to purchase the suit property is not sustained by the weight of the evidence.

The only other insistence for reversal is that the trial court erred in overruling grounds of the motion for new trial which took the point that the verdict of $1,600 is excessive.

■ On purchaser's breach of contract to purchase realty, vendor may retain property and sue at law for breach of contract. West v. Cunningham, 9 Port. 104; Clements v. Leonard (Fla.), 70 So.2d 840.

As to the measure of damages, it was said by this court in Adams v. McMillan Ex'or, 7 Port. 73, as follows:

"When the right to re-sell lands, for a failure to comply with the contract, is one of the conditions of the sale, the difference between the two sales, is the measure of damages agreed on by the parties for a failure to perform the contract, and is in the nature of stipulated damages. But if no such condition be entered into, as one of the terms of sale, the vendor, upon a breach of the contract, would certainly be entitled to recover such damages as he had sustained by the violation of the contract of sale; and we think the difference between the price at which the land was first bid off, and the price at the second sale, would afford a good criterion of the damages sustained by the vendor; not, however, as binding on the jury, but as fit and proper testimony to be received by them as a medium of coming to a correct conclusion. It would be necessary, however, that the second sale, as well as the first, should be conducted with fairness, and no means be resorted to which would impair the value of the land in the estimation of the public. * * *" (7 Port. 88.)

To like effect see West v. Cunningham, 9 Port. 104, 107; Hutton v. Williams, 35 Ala. 503; Howison v. Oakley, 118 Ala. 215, 23 So. 810.

■ The money paid by the Ashursts for the months of July, 1958, through June, 1959, under the terms of the agreement was retainable by the Rossers as rent, since the Ashursts did not carry out their agreement to purchase. The amount so paid was in the nature of a penalty and not liquidated damages. Cf. Lobman v. Sawyer, 37 Ala.App. 582, 74 So.2d 502, cert. denied, 261 Ala. 699, 74 So.2d 505. The Ashursts remained in possession of the property in the month of July, 1959, and paid the sum of $151 to the Rossers for that privilege. This payment, under the evidence, should be considered as rent.

■ In the sale to Weldon, the Rossers received the sum of $4,695.60 for their equity, which is $195.60 more than they would have received for their equity if the Ashursts had performed their agreement to purchase.

But the Rossers suffered certain expenses because of the Ashursts' failure to purchase, which we think must be taken into consideration. The Rossers had to make payments on their mortgage indebtedness from August 1 through December 15, 1959, which amounted to $231.83. They had to pay a real estate agent a commission of $937.50 and attorney's fees, which were provided for in the agreement, amounted to $300. The total of these expenditures is $1,469.33, but this sum must be reduced by $195.60, the amount which the Rossers received for their equity over and above the value of that equity at the time of the execution of the agreement. Thus the failure of the Ashursts to perform their agreement to purchase resulted in a loss to the Rossers of the sum of $1,258.73. As we

view the record, the judgment is excessive in the amount of $291.62.

The judgment is therefore amended by a remittitur duly entered in the sum of $291.62. The judgment, as so corrected, is affirmed at the cost of appellees. See Cassels v. Alabama City, G. & A. R. Co., 198 Ala. 250, 73 So. 494; Lampkin v. Thomas, 202 Ala. 316, 80 So. 398.

Corrected and affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.