[File No. 6661.]

STATE OF NORTH DAKOTA, Doing Business as the Bank of North Dakota, a State Agency, Respondent, v. CHARLES L. CRUM, Appellant.

(292 N. W. 392.)

Opinion filed May 11, 1940.   Rehearing denied June 6, 1940.

*Cameron & Cameron,* for appellant.
*James A. Lillle* and *Robert Birdzell,* for respondent.

BURR, J.   This action involves conflicting claims to lots 19 and 20, block 7, Mead's Addition to the city of Mandan.

On February 4, 1925, the State sold the premises to the defendant by warranty deed, Ex. 2.   The defendant executed a mortgage, Ex. 1, to secure part of the purchase price, which mortgage was transferred to the Bank of North Dakota.

The defendant testified that prior to January 1, 1933, he made improvements on the place, and subsequently built a garage, but could not state whether the garage was built before or after November 26, 1935.   The improvements cost between seven and eight hundred dollars.

On December 22, 1932, the defendant executed a note, Ex. 5 and a mortgage, Ex. 4, to the bank in the sum of $2,400, in lieu of the old indebtedness, agreeing: to make monthly payments; to pay all assessments and taxes; to keep the buildings insured against loss or damage by fire, tornado, or cyclone; and that the bank could pay the taxes, assessments, and insurance premiums in case of default, and add the same to the amount due.   At this time the plaintiff paid insurance and taxes in the amount of $242.57.

The defendant made no payments on this note and mortgage, and thereafter, until the commencement of this action, plaintiff paid

$536.37 in insurance and taxes, $8 in recording fees, etc., and, since the commencement of the action, $19.60 for insurance.

On the 26th day of November, 1935, the defendant executed and delivered to the plaintiff, as second party, a warranty deed, Ex. A, for "One Dollar and other valuable considerations," and therein warranted that the premises "are free from all encumbrances except mortgage for $2,400 now of record held by The Bank of North Dakota, Bismarck, N. D. recorded in Book "78" of Mortgages, Page 304, *which is to be satisfied by second party."*

Concurrently with this deed, the plaintiff gave the defendant a lease of the premises (Ex. B) for one year, beginning December 1, 1935. This lease, Ex. B, requires the defendant to pay as rent, "the sum of Thirty Dollars ($30) per month for and during the term of this Lease," and provides that if the defendant fails to pay the rent according to agreement, the plaintiff may "re-enter and take full and absolute possession of the above rented premises," and that the defendant "will, at the expiration of the term herein recited, quietly yield and surrender the aforesaid rented premises" to the plaintiff.

This lease has the following provision: "It is understood and agreed between the parties hereto that the second party shall have the right to purchase the premises herein described during the term of this lease for the net investment of the party of the first part with simple interest computed at 6% per annum to the date of purchase, together with any advances first party may have made or be required to make for taxes or other charges or expenses in connection with this property, such as insurance, abstract fees, and the like. Second party to receive credit for any payments he may make as rental, or otherwise. The terms of such purchase to be mutually agreed upon between the parties hereto but in any event to be not less than one-third of the amount of the investment of the first party, and the balance to be arranged not to exceed eight annual payments, all of such payments to be made on a monthly basis."

The defendant paid rent, sufficient to hold the premises until the middle of June, 1936, the last payment being made on January 2, 1937.

On April 26, 1938, the plaintiff commenced an action in justice court to recover possession. In its complaint, it alleges: ownership

of the premises, the lease given the defendant, the expiration of the lease, the failure to pay rent, and the refusal to vacate and deliver possession to the plaintiff.

The defendant answered, claiming to be the owner of the premises under contract of purchase, subject to certain liens of the plaintiff; and that "his defense herein cannot be properly heard in this court by reason of the fact that his title to the said real estate is involved, . . ."

The action was certified to the district court, and at the opening of the trial, defendant filed an amended answer to the same effect as his answer in justice court, but further alleging "That this action being an action for possession and being an action at law, the defendant is not able to properly plead and prove his rights and equities under said contract, and that his rights and equities have never been determined or adjudicated."

The case was tried to the court without a jury. The court found: the plaintiff is the owner of the premises described; that the lease merely "contained an option to purchase in favor of the defendant for a period of one year from the date thereof;" that the same "has terminated and expired, and that the defendant failed to exercise the said option provided in said lease." The court, therefore, ordered judgment "for the delivery of possession of said premises to the plaintiff" with costs. Judgment was entered accordingly, and the defendant appeals.

The specifications of error set forth the two main contentions as follows:

"The Court erred in holding and determining that the deed and lease represented by exhibits "A" and "B" vested absolute title in the plaintiff and extinguished any equity or right of defendant therein.

"The Court erred in overruling and denying the defendant's motion to dismiss this action at the close of the plaintiff's and defendant's case after both parties had rested."

The motion made at the end of plaintiff's case was a motion to dismiss the action on the ground that the action was in forcible entry and detainer for the possession of property; and "that the possession of the defendant was under a contract rather than a lease, and in an action in forcible entry and detainer it must be determined by foreclosure and

defendant has the right of redemption, which is incidental to all contracts of purchase as well as mortgages."

At the close of the entire case the defendant made a similar motion, setting forth that "the facts disclose that this is a contract of purchase which should be foreclosed by an action in equity. The court should . . . fix and determine such period of redemption . . . and give the equitable relief in the action as it is now framed."

In his brief, appellant states: "The issue in this cause is whether or not the deed and lease, coupled with an option, is an absolute conveyance, extinguishing the appellant's equity in the lots in question, and whether or not the plaintiff and respondent are pursuing the proper remedy by bringing an action in unlawful detainer, or whether it should bring an action to foreclose."

There is no merit in defendant's contention that the district court had no jurisdiction to determine the rights and interests in this case, and that it was necessary to begin "a proper action . . . for that purpose." All of the rights and interests of the parties with reference to this real estate could be determined in this action upon proper pleadings, and the court had the power to permit such amendments to the pleadings as were necessary to bring the issues to a head.

Section 9055 of the Compiled Laws requires the justice, in such a case as this, to "discontinue the trial and forthwith certify and transmit to the district court of his county all the pleadings and papers filed with him in such action." One of the purposes of this transmission is to have the title to the real estate determined in the action brought, and the district court "shall have the same jurisdiction over such action as if it had been originally commenced therein." Comp. Laws, § 9056. Upon the filing of the pleadings, papers, and transcript, "Such action shall be forthwith entered on the calendar of the district court and shall . . . stand for trial at the next regular term. . . ." Comp. Laws, § 9057. The provisions of § 7482 of the Compiled Laws, giving to the district court power before judgment, in furtherance of justice, to amend any pleading by inserting other allegations material to the case, are applicable to this case.

Appellant claims that the transaction which culminated in Exs. A and B shows that the former was in fact given as security, and therefore, he has an interest in the land which can not be terminated except

by foreclosure. He contends that Ex. A must be construed as a mortgage; that the purpose was to secure to the plaintiff the payment of its debt; that the lease is to be construed in connection therewith; and the option provision, taken in connection with this theory, shows the deed was not an absolute transfer.

The trial court held that Ex. A was a deed. "A judgment holding that an instrument purporting to be a deed is in fact a deed, will not be disturbed in the absence of clear and satisfactory proof to the contrary." Graham Co. v. Russell, 55 N. D. 717, 718, 215 N. W. 146.

That a "warranty deed was made subject to a defeasance, may be shown by evidence," but "A warranty deed, absolute upon its face, is presumed to be an unconditional conveyance. The burden to overthrow this presumption is upon him who asserts the contrary and the rule is that the proof, to be sufficient, must be clear, satisfactory, and specific, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt." Dean v. Smith, 53 N. D. 123, 124, 204 N. W. 987.

In this case cited, we show that "One of the strongest and surest tests as to whether a conveyance, absolute in form, shall be deemed a security conveyance, is the continuance of the indebtedness or its extinguishment. If the debt continues as such, the transfer is a mortgage."

At the time Ex. A was delivered, defendant's note and mortgage of date December 22, 1932 (Exs. 4 & 5) were outstanding. On the trial, the defendant produced them and offered them in evidence as exhibits. The presumption is "that things which a person possesses are owned by him," and "that an obligation delivered up to the debtor has been paid." Section 7936, Subdivs. 11 and 9. Thus when the defendant executed his deed, Ex. A, his obligations to the plaintiff were satisfied. The deed so required. We find Ex. A was in fact what it purports to be, a warranty deed.

After the delivery of Ex. A, the only relationship between the parties was that of landlord and tenant. The relationship could not be that of mortgagor and mortgagee, and at the same time, tenant and landlord. The two situations are incompatible.

This tenancy is evidenced by Ex. B, which was executed on behalf

of the plaintiff by one P. H. Butler. The appellant urges that he has an interest in the land under the option provision in the lease.

The validity of this claim depends upon the character of this "option" provision.

This provision did not convey to the defendant any interest in the premises. The defendant knew that if he desired to exercise this option he would be required to pay the amount of the investment with interest, taxes, insurance, other expenses, etc. In that case he would receive credit for any payments he had theretofore made, whether as rental or otherwise. There was no provision in either the deed, or the lease, to consider any rent paid as anything else but rent.

Without considering whether there was any consideration for this provision so as to dignify it by the name of option, there was no binding obligation upon the defendant to exercise it. Even if the provision be considered a continuing offer, expiring at the time of the demand for the surrender of the premises, nevertheless, it is no more than an option.

In Western U. Teleg. Co. v. Brown, 253 U..S. 101, 110, 64 L. ed. 803, 807, 40 S. Ct. 460, the court defines an option as "a privilege given by the owner of property to another to buy the property at his election. It secures the privilege to buy and is not of itself a purchase. The owner does not sell his property; he gives to another the right to buy at his election."

In Keogh v. Peck, 316 Ill. 318, 321, 147 N. E. 266, 38 A.L.R. 1151, the court states: "An option . . . is merely a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time."

In Sweézy v. Jones, 65 Iowa 272, 21 N. W. 603, the court was considering an option contained in a lease, and says: "As to the interest said to exist by reason of the option . . . we have to say that we do not think it such as to constitute a right in the land. . . . The person holding the right of option is not a purchaser. He becomes such only by exercising his right of option, and not until he becomes a purchaser does he acquire anything which a court of law or equity can recognize."

This case is cited and affirmed in Conn v. Tonner, 86 Iowa 577, 53

N. W. 320, where a lease of land contained an option given to the purchaser. .

The Kansas court had the same question before it, and holds: "Where the owner of land leases it . . . at a stipulated annual rental, and the . . . lease contains a stipulation that the renters shall have the right, at the expiration of the lease, to purchase the premises, if they shall so elect . . . , there is no completed sale, nor do the renters acquire any estate in the land beyond the leasehold interest until they have elected to accept the offer. . . ." Bras v. Sheffield, 49 Kan. 702, 31 P. 306, 33 Am. St. Rep. 386.

The "option" contract, when combined with acceptance by the appellant would constitute the contract of purchase between the parties the instant that the offer was accepted within the definite terms of the contract. It would then become a mutual contract, and could be enforced against the appellant, had he thereafter failed to perform. Beddow v. Flage, 22 N. D. 53, 58, 59, 132 N. W. 637, 639, 640.

The defendant testified that at the time Ex. A and Ex. B were executed, he had a conversation with Mr. Butler relative to what he terms the preservation of any equity he had in the land; and that after the lease was executed, but as part of the same transaction, Mr. Butler told him "the lease would put me back where I could remain in the property with the option, and whenever I paid up why I would get another deed from the Bank of North Dakota . . . , and I told him that in giving the deed that I wanted him to know that it was for the sole purpose of securing the purchase price, the balance of the purchase price that I owed on this house, and he stated in substance that he understood it that way himself, and he fixed it that way so that his records would be in the clear and would not subject him to criticism, and I didn't want to subject him to criticism."

When a motion was made to strike out this "conversation had at the time of the transaction when the deal between the parties was reduced to writing," the witness said, "I'll say to the court that we talked it over after the papers were signed." He further testifies that he told Mr. Butler "that anything that I paid I wanted it understood that it would go on the purchase price, you could call it rental or you could call it payment on the purchase price, either one."

The plaintiff objected to this testimony regarding conversations with Mr. Butler as to equities had prior to the execution of the deed and the lease on the ground that the whole transaction was merged in the deed, and objected to the conversations had after the execution of these instruments, but the court overruled the objections.

The conversations with Mr. Butler, even if they have probative effect, do not show that this provision is anything else but an option. The defendant testified that at various times since the execution of the lease, Mr. Butler "would ask me when I was going to exercise my option in the lease," and "I told him just as soon as I possibly could." When asked, "Did you ever exercise that option?" his answer was "No. I figured it was largely a matter of form." At the time of the trial, he made no attempt to exercise the option. Clearly, the parties themselves considered this provision was an option merely.

The trial court, in a carefully prepared memorandum opinion, determined there was no debt existing after the deed was given. It had been extinguished, and therefore, the deed secured nothing. The court says, "There can be no mortgage unless there is an obligation to be secured. It was entirely optional with the defendant whether he would repurchase. . . ."

The trial court found that the plaintiff was the owner of the premises and entitled to the possession. Upon the record, we so find, and the judgment, therefore, is affirmed.

NUESSLE, Ch. J., and MORRIS, CHRISTIANSON, and BURKE, JJ., concur.