[File No. 6994]

CALEB R. LARSON, Respondent, v. KENNETH M. WOOD
and HAZEL PEARL WOOD, Appellants.

(25 NW2d 100)

Opinion filed Nov. 27, 1946

*Day, Lundberg & Stokes,* for appellants.

*T. H. H. Thoresen,* for respondent.

12

BURR, J. This is an action involving possession of real property and collection of past due rent.

The plaintiff, as owner, alleges: The defendants had been in possession under a lease, Ex. A; that the term of the lease had expired; rent was unpaid, defendants continued in possession and refused to deliver.

Defendants' amended answer denies "they are holding possession of said property under the terms of a Lease and allege that said property was sold . . . under and by virtue of the terms of a Contract for Deed, . . . . That pursuant to the terms of said Contract . . . took possession . . . and still hold possession . . . ." That they made and paid for "permanent alterations and improvements, which became a part of said property; . . . and cannot be removed . . . ." And that "on the 15th day of April 1944 One Thousand Three Hundred Forty-four and 43/100 ($1,344.43) Dollars in cash was tendered to the Plaintiff as the balance due on said Contract for Deed which tender was refused . . . ." To this amended answer they attach a copy of Ex. A. their alleged "Contract for Deed" and make it a part thereof. Thus both parties claim under this Ex. A. — an instrument denominated "Lease with Option to buy."

The chronology of the transactions resulting in the execution of this instrument is as follows: D. F. McGowan, a real estate dealer of Grand Forks, had an interview with the defendant regarding the property; November 25, 1940, McGowan wrote to the plaintiff, (Ex. 7), to the effect that he was informed the plaintiff owned the property involved and that,

"A friend of mine who is a very responsible party and who owns considerable real estate would like to arrange to purchase

this property if suitable terms and conditions could be arranged. . . .

This party who is interested wishes to remodel the property and make it over into small apartments . . . . . .

If you are interested, I could probably arrange to be in Minneapolis . . . if you . . . could arrange to meet me."

McGowan went to Minneapolis, met the plaintiff and told him he was interested in the property for Kenneth Wood. Some discussion took place and McGowan returned home. December 12, he wrote to the plaintiff, (Ex. 5), stating, "Since returning home, I have had several talks with Kenny Wood regarding the proposed sale of your property to him and his plans for remodeling same." He further states, "I enclose herewith for your consideration a Lease with Option to buy between you and Mr. Wood for the purchase of the property. You will note that it is for a period of three years at 6% interest with monthly payments of $65.00 to include taxes, fire insurance, interest and principal. I figure that at the end of that time, Mr. Wood would owe a balance to you of about $2,500.00 and would then be able to secure a loan to pay you up in full."

He further states: "With this kind of an agreement, title to the property remains in you until the Option is exercised and if he fails to exercise his Option within three years by paying you the balance due, then his payments only constitute rent and his lease and option would expire. You would then be free to sell the property to some one else if you so desired."

He sets forth how Mr. Wood would be able to finance the deal, and writes, "I would recommend that you accept Mr. Wood's proposition as I believe it is fair and equitable for both of you. He wishes to start in next Monday with the improvements, . . . ."

The proposed "Lease with Option to purchase," drafted by Mc-Gowan and known as Ex. A., is as follows:

## "LEASE WITH OPTION TO BUY

THIS AGREEMENT, Made and entered into this 14th day of December, A. D. 1940, by and between CALEB R. LARSON

of the City of St. Paul, Minnesota, party of the first part, and KENNETH M. WOOD and HAZEL PEARL WOOD, both of the City of Grand Forks, North Dakota, parties of the second part, WITNESSETH:

That the party of the first part has this day leased and rented to the parties of the second part, the following described real estate in the County of Grand Forks, State of North Dakota, to-wit:

Lots One (1) and Two (2) in Block Thirty (30) of Lindsay's Addition to the City of Grand Forks, North Dakota.

That the said parties of the second part hereby agree to pay rental for said premises for and at the rate of Sixty-five ($65.00) Dollars per month, payable on the first day of each and every month in advance, for the term and period of this lease, the first payment to be made April 1st, 1941, at which date the lease shall commence and shall terminate on the 31st day of March, 1944.

Parties of the second part agree to pay all taxes and assessments levied against the above described property for the year of 1941 and all subsequent years during the period of this lease, which taxes however are included in the monthly rental of $65.00, and are to be paid by the party of the first part out of said rents.

It is hereby agreed by and between the parties hereto that the parties of the second part must heat the above described premises during the term of this lease at their own expense.

It is further agreed by and between the parties hereto that the parties of the second part have the right to sublet the above premises during the period of this lease.

Parties of the second part further agree to use said property in a careful and prudent manner and to keep the same in good repair at their own expense.

Parties of the second part also agree to keep the building now situated upon said real estate insured against fire and tornado loss in some reliable insurance company in the sum of not less than $3000.00 during the continuance of this lease for the benefit of the party of the first part as his interest may appear at the time of loss. The premium on such insurance to be paid by the

party of the first part from the proceeds of his rents shown above.

Party of the first part hereby permits said parties of the second part to at once start remodeling the building on the above described premises to make same into four apartments as agreed upon, and further agrees to pay for said improvements to the extent of not to exceed $750.00, and all costs and expense for such improvements over and above that amount are to be borne and paid by the parties of the second part, which they hereby agree to do.

It is further agreed that should the parties of the second part fail to pay any of the installments for rentals as provided above, or to perform any of the terms or conditions herein specified, then without previous notice or demand, this lease shall at the option of the party of the first part be forfeited, and the parties of the second part shall upon such failure to pay or other breach of conditions herein, forfeit and lose all rights, title or interest of any kind in and to said real estate and the right to use and occupy the same, or the right to collect further rentals, and shall also lose the right to exercise the option herein; and the option to purchase herein granted shall, at the election of the party of the first part, be terminated and lost to the parties of the second part, and the said parties of the second part may be ejected from said premises at any time after such forfeiture of this lease in the same manner and mode as any tenant from month to month.

Parties of the second part shall have the option of purchasing the above described property on or before the 31st day of March, 1944, for the sum of $3750.00, with interest thereon at 6% per annum from March 1st, 1941, up to the date this option may be exercised.

If said option is exercised on or before March 31st, 1944, it is understood and agreed by the parties hereto that credit shall be given on said purchase price for all cash payments, or rents, made by the parties of the second part during the term of this lease with interest at 6% from the date payment is made to the date option is exercised.

It is also understood and agreed that to the said option price shall be added the amounts or sums of money paid by the party of the first part for taxes on said premises for the year of 1941 and subsequent years, and also such sums as may be paid for insurance premiums during the term of this lease and option plus 6% interest thereon from the date of payment of said sums to the date option is exercised.

If and when said option is exercised, then the party of the first part agrees to deliver to the parties of the second part a good and sufficient Warranty Deed to said premises, together with an Abstract of Title showing clear and merchantable title from the said first party.

It is further agreed that all covenants and agreements of the parties hereto shall extend to and be binding and obligatory upon the heirs, executors, administrators and assigns of the parties hereto, and that time is and shall be the essence of this option.

IN WITNESS WHEREOF, we have set our hands and seals the day and year first above written.

Witnesses:

| | |
|---|---|
| Robert L. Schifsky | Caleb R. Larson |
| Harold Depray | Party of the First Part. |
| D. F. McGowan | Hazel Pearl Wood |
| Elma Anderson | Kenneth M. Wood |
| | Parties of the Second Part." |

The signatures of both parties were duly acknowledged.

December 16, 1940, plaintiff wrote McGowan, (Ex. 23), stating:

"In reading over the Lease with option to buy, I found that it contained no permission for Wood to sublease the apartment or collect the rents therefrom. I could not find any clause which provided for the heating of the premises either. I am returning the Leases to you in order that you may add the following clauses:

'It is hereby agreed by and between the parties hereto that the parties of the second part must heat the above described premises during the term of this lease at their own expense.'

'It is further agreed by and between the parties hereto that

the parties of the second part have the right to sublet the above premises during the period of this lease.'

I have also drawn a line through one phrase in the first clause, which should be eliminated from this Lease."

These corrections were made and so the instrument was signed by the parties. However amendments were made in writing increasing the amount plaintiff would advance for improvements and increasing the purchase price under the option.

The amendments originated with a letter dated February 24, 1941, written by McGowan to Larson (Ex. 15) in which he states,

"In going over the figures with Mr. Wood, it appears that he was a little too conservative over what the expense would be, and it now appears that he will need an additional $100.00. If you will refer to your copy of the Lease and Option, you will note that we agreed to allow him not to exceed $750.00 for such improvements and, of course, if this amount is to be increased, a new agreement will have to be entered into with him. . . . If this additional $100.00 is allowed by you, then it will be necessary to draw up a new Lease and Option with Mr. Wood and cancel the old one and, of course, his Option for purchasing would then be increased from $3,750.00 to $3,850.00."

This was long after Wood signed Ex. A. and he must have examined it and the terms and must have known it was merely a lease with option to buy. In response to this letter Larson wired, "Increase option contract additional hundred as per your letter." Instead of drawing up a new instrument the parties executed Ex. B. as follows:

"AMENDMENT correcting and changing paragraphs 10 and 12 of the Lease with Option to Buy dated December 14th, 1940 by and between CALEB R. LARSON of St. Paul, Minnesota, hereinafter known as party of the first part, and KENNETH M. WOOD and HAZEL PEARL WOOD of the City of Grand Forks, North Dakota, hereinafter known as parties of the second part.

It is hereby understood and agreed to by the parties hereto

that Paragraph 10 of the Lease with Option to Buy referred to above is hereby changed and corrected to read as follows:

'Party of the first part hereby permits said parties of the second part to at once start remodelling the building on the above described premises to make same into four apartments as agreed upon, and further agrees to pay for said improvements to the extent of not to exceed $850.00, and all costs and expense for such improvements over and above that amount are to be borne and paid by parties of the second part, which they hereby agree to do.'

It is further understood and agreed to by the parties hereto that Paragraph 12 of said Lease with Option to Buy is hereby changed and corrected to read as follows:

'Parties of the second part shall have the option of purchasing the above described property on or before the 31st day of March, 1944 for the sum of $3850.00 with interest thereon at 6% per annum from March 1st, 1941, up to the time this option may be exercised.'

IN WITNESS WHEREOF, we have set our hands and seals on this 27th day of February, A. D. 1941.
Witnesses:

| | |
|---|---|
| Bernice Prozinski | Caleb R. Larson |
| C. F. Lacy | Party of the First Part. |
| D. F. McGowan | Kenneth M. Wood |
| Elma Anderson | Hazel Pearl Wood |
| | Parties of the Second Part." |

Under the provisions of this "Lease with Option to Buy" the defendants went into possession of the premises, immediately began remodeling, and the plaintiff advanced the $850.00 promised.

By the first of April 1944 the defendants had failed to exercise their option to buy and were in default in the payment of rent. On or about April 8, 1944, plaintiff served written notice upon defendants setting forth they were $520.00 in default on their rent, that the option provision was cancelled, that the lease was

"terminated as of April 1, 1944, and you are hereby notified to vacate . . . ." The notice also stated that the plaintiff "has taken possession of said premises as of April 1, 1944." However, he did not get possession.

April 15, 1944, the defendants tendered the plaintiff $1,344.43 stating in a letter dated April 21, 1944, (Ex. 1), it was "the balance due you on the contract . . . on the property described . . . . If this calculation is not correct, please advise, . . . . If we do not hear to the contrary, we shall assume that the above stated figure is the correct amount." The tender was refused as unavailing, and in addition plaintiff, after setting forth some of the clauses of the instrument, stated, "You are further advised that the amount of $1,344.43 is not considered as the correct amount, but in as much as we do not recognize any obligation for the sale of this property, the amount which you deemed to be due is immaterial."

This latter statement regarding amount is correct even if defendants, at the time of tender, had the right to exercise this option or had a contract for sale; but we need not go into the proof thereof.

The defendants refused to surrender possession and this action was commenced.

The defendants, having refused to surrender the premises, the trial court on September 7, 1944, appointed "a receiver of the rents and profits of the property involved." The receiver collected the rents payable on and after October 1, 1944.

The trial court found for the plaintiff and awarded him possession of the property; and also found that at the time of the expiration of the lease the defendants owed the plaintiff eight months' rent at $65.00 a month, and further that they had failed to pay any of the rent for the premises from that date until the time of the appointment of the receiver and thus owed an additional $390.00. Judgment was entered accordingly, and defendants appealed, demanding a trial anew.

A portion of appellants' brief is devoted to the contention that the evidence clearly shows a mutual mistake of fact by the parties to the instrument and a mistake of law on the part of the

scrivener, though no attempt was made to reform and defendants' case is predicated on it as it stands.

The court permitted the appellants to introduce evidence to the effect that defendants wanted to buy the property, not to lease it, and that they asked McGowan to take the matter up with the plaintiff; that Wood had no thought of renting and that the parties intended a contract of sale but by mistake a lease was drafted. Appellants cite § 9–0703 of the Code as to rule of interpretation and State ex rel. Miller v. Hall, 25 ND 85, 141 NW 124, to show the name given the instrument is not conclusive; and other of our decisions to show the instrument should be considered a contract for sale.

No difficulty arises as to the law with reference to the rules of interpretation. The difficulty is that the facts in this case do not sustain the view of the instrument taken by defendants.

Defendants argue Ex. A. provides that if the defendants "failed to pay any of the installments for rentals" the lease could be cancelled and claim such provision really belongs to a contract for deed and indicates that Ex. A. should be so construed. But the exhibit is therein referring to rentals under the lease and clearly intends that if the amount of monthly rentals was not paid the lease could be cancelled. Defendants also point out that Ex. A. provides that all the covenants and agreements shall be binding "upon the heirs, executors, administrators and assigns of the parties hereto" and claims such provision has no place in a lease and again shows the parties considered the document a contract to purchase. Ex. A. was not drawn by a lawyer, who would be expected to know when and where to use such provision, and it will also be noted that such provision is in the final paragraph which deals with the option. Because correct phraseology was not used at all times does not militate against the contention of the plaintiff. Phraseology is to be considered in interpreting the contract even though correct terms are not always used, in order to determine intent.

Stress is laid upon a portion of Mr. McGowan's testimony wherein he stated he was to get from the plaintiff a commission of $150.00 for making a sale. However, there could be no sale

unless the defendants exercised their option, and in any event this question of commission is not a part of Ex. A.

There is testimony which indicates strongly that when the defendants Wood first became interested in acquiring the property they were contemplating buying it and that Mr. McGowan so stated to the plaintiff. There were no direct dealings between the parties.

Mr. Wood testified: he was acquainted with the premises; the Grand Forks Building and Loan Association was handling the rental thereof and tried to rent the property to him; that he "was interested in buying the property only;" later, he and Mr. McGowan agreed the latter should talk with Larson, "arrange a deal" and witness would remodel. He said that he had no talk with McGowan about renting it; never had any correspondence with Mr. Larson regarding it and never dealt with him personally. When asked, "Didn't you enter into the lease with option to buy with him here?" He answered, "Not with Mr. Larson directly." He admitted he signed "the Lease with Option to buy" and that he wrote a letter wherein he stated, "Mr. McGowan arranged a deal with Mr. Larson at our request and as an agent of the Northwestern Mutual Savings & Loan Company of Fargo." He acknowledged he wrote the letter, Ex. F. dated April 13, 1944, wherein he states, "We are actually behind February and March and now April's payment is due any time . . . ." And, "Can I send you a check and clean up these three payments so we can execute the option provision June 1st?" In explanation of this latter statement he says, "We had a three year period to complete this three year contract. We thought it ran from June 1, 1941 to June 1, 1944." Clearly from this he knew Ex. A. gave him an option to buy and that alone. Nowhere does he claim that there was a contract wherein he agreed to buy.

McGowan testified he had been a real estate dealer for thirty-two years; he was acquainted with the plaintiff; and went to Minneapolis to confer with him in order to make a deal. He says he told Larson he had a prospective purchaser and "so I explained to him what I thought would be the best kind of a deal for both of them." When asked what this was he said, "A Lease

with option to buy." They discussed refinancing and he said with respect thereto: "That was determined by the time the lease was to run and the option. That is, in figuring what balance would be due Mr. Larson at that time so it could be refinanced. I figured it would take about three years to do that." He says he never discussed with either party any arrangement for renting and when asked what was his purpose in preparing Ex. A., he replied:

"My purpose in preparing it in that form, I felt it was better security for Mr. Larson. He was more sure of getting his money in that kind of a sale than in a contract for deed or a mortgage. I thought he was more sure of getting his money within that three year period."

Neither Mr. nor Mrs. Wood claimed signing the instrument thinking it was a contract for sale or under any mistake of fact. There was no mistake of fact on the part of McGowan when he drew the instrument which he intended to draw and which he stated was his purpose to draw. He was the agent for the defendants, he was making the deal for them, though he at one time stated he was working for both parties. He considered that the better plan was—enter into a lease, give the defendants the option to buy and to remodel and have the plaintiff furnish $850.00 for that purpose. Presumably the defendants read the instrument. Their signatures are attested by two witnesses; nowhere do they claim any misstatement of fact to them and there is not even a suggestion of fraud. The defendants called it a lease, recognized they had an option to buy and so denominated it.

Plaintiff testified McGowan wrote to him about a client who was interested in renting the property, referring to a letter he had received. In this matter of renting the letter states the client was interested in purchasing the property. He states McGowan came to the Twin Cities about two weeks afterward, and at that time told him the man interested in the property was Kenneth Wood, and that Wood "was interested in renting the house for the purpose of remodeling it and subdividing it into apartments." But McGowan, apparently having full knowledge of

the financial condition of the defendants, intentionally drew a lease after the parties determined this was to be the nature of the contract.

Our statutes are explicit in interpreting a contract. When a contract is executed in writing it "supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Section 9-0607 Rev Code. See Jensen v. Siegfried, 66 ND 222, 263 NW 715. We hold in Allgood v. National L. Ins. Co. 61 ND 763, 240 NW 874,

"Where a written contract is complete, clear and unambiguous and contains mutual contractual covenants, or the consideration consists of specific, direct promise to do or not to do certain things, such parts cannot be changed by parol, nor new terms added, in the absence of fraud, misconduct or accident."

The rules for interpreting a contract are simple. "The intention of the parties is to be ascertained from the writing alone if possible . . . ." Section 9-0704 of Rev Code. And "the whole of a contract is to be taken together." Section 9-0706 of the Rev Code. It is true we must seek to determine the real intention of the parties; and § 9-0705 of the Rev Code provides:

"When through fraud, mistake, or accident a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing disregarded."

But no one here claims fraud or accident or misconduct and no testimony is furnished indicating any mistake on the part of the scrivener McGowan even if such could be introduced under the pleadings. McGowan was acting for the defendants; and possibly for himself if a sale was made so as to earn a commission. The parties took his suggestion and advice as to the form and nature of the contract to be drawn, and the evidence shows no matter what may have been the thoughts in mind at the time of the beginning of the negotiations, both sides agreed on a "Lease with an Option to Buy" and nothing more.

The defendants do not ask for reformation of Ex. A., nor do they claim that some phrases or clause mutually agreed upon was omitted.

In State v. Crum, 70 ND 177, 292 NW 392, we show that, "An option to purchase property is a mere privilege to buy, given by the owner of the property to another. The optionee is not a purchaser." The defendants Wood had a privilege to buy in accordance with certain terms. If they accepted that privilege by exercising the right of option within the time specified it would then become a mutual contract, and could be enforced against Larson, had he thereafter failed to perform. See State v. Crum (ND) supra; Beddow v. Flage, 22 ND 53, 58, 132 NW 637, 639. As the defendants never accepted the option within the time stated the instrument never ripened into a contract for sale and as set forth in Beddow v. Flage (ND) supra, until they accepted the option it was a one-sided contract, but immediately on their making the acceptance in writing it would become a bilateral contract.

Thus, even though the defendants at first may have intended to purchase the property, yet, through their agent and the plaintiff, and after giving due consideration to all the financial requirements and conditions, they decided that the written instrument to be executed by the parties should be a Lease with Option to buy rather than a Contract for Sale. If they did not intend this at first, they did when they signed. Thereunder, they got possession of the property for three years, were permitted to remodel, sublet and keep the surplus rent, were not bound to buy, and yet at any time within three years they could notify the plaintiff they exercised their option and he would be compelled to sell. Upon the payment of the purchase price of $3,850.00 they would get credit for whatever rent they had paid up to the time they exercised their option and upon paying the remainder of the purchase price the plaintiff would give them "a good and sufficient Warranty Deed to said premises, together with an Abstract of Title showing clear and merchantable title . . . ." There is nothing therein compelling the defendants to purchase the property. They could continue to toy with the idea until the end of March, 1944, or they could abandon any idea of purchase. Their silence as to purchase, or failure to act thereon, did not in any manner obligate them to the plaintiff. The option was purely a

unilateral right to be enforced solely by the defendants, within the time fixed.

It is quite clear this is the intent of the instrument. There is nothing abstruse or ambiguous therein requiring construction. Failure to pay the rent would subject them to the danger of cancellation of the lease and in that case their right to exercise the option would cease. It is significant that it was the plaintiff who was to pay the taxes and insurance premiums,—not the ones who claimed a contract to buy, unless they bought. These liabilities came out of the rent even though defendants looked after the payments for Larson. If the defendants decided to buy then the taxes and insurance paid out of the rent became their liability and was to be added to the purchase price.

Defendants, in their brief, claim that as a matter of fact the defendants were the ones who did actually pay the taxes and the insurance and they refer to the provision in Ex. A., wherein it is stated the amounts thereof were to be added to the purchase price. It will be noted however that this was only in case the defendants exercised their option. In case the defendants did so the taxes and insurance paid out of the rent, or otherwise paid by the plaintiff would be added to the purchase price. The property belonged to the plaintiff and he had to pay the taxes thereon; but if defendants decided to buy then the $65.00 per month would be considered rent and the amount deducted therefrom for taxes would be paid by defendants so that plaintiff would get $65.00 per month rent net and defendants would pay $3,-850.00 for the place and all taxes from the time they took possession.

The defendant K. Wood in his letter to plaintiff's counsel dated April 13, 1944, (Ex. F.), states,

"We are wondering if Caleb was in town and what prompted him to take such drastic action in regard *to his and our lease* (italics ours) which was to run on a $65.00 a month basis for three years. The option provision was to be executed at the end of the three year period which is up June 1st. 1944."

This letter was written after the notice was served upon him cancelling his option and cancelling the lease. As a matter of

fact the lease had expired by its own limitations by that time as had the "option." The defendants left for Bremerton, Washington, in December, 1942, and lived there up to the time of trial at least—October, 1944. Apparently they were under the impression the date of expiration was June rather than the end of March.

While defendants, in their brief, alleged the trial court erred in finding that $910.00 of rent was due the plaintiff they nowhere in the brief set forth anything showing error in computation. The record shows the defendants owed the plaintiff much more than admitted in the letter. (Ex. F.) The trial court found the total amount was $910.00 and we so find.

Defendants refer to some testimony Mr. McGowan gave when he was testifying with reference to a mortgage Larson had placed upon the property and the efforts to refinance it. The rentals were to be paid to the mortgagee apparently. He testified that Mr. Larson had asked for a statement of what was due on these mortgages and there was an understanding that "when this first mortgage of Mr. Larson's was paid down so it could be refinanced, . . . the property was to be refinanced." This second refinancing was to be done by the Woods but apparently this attempt at second refinancing was made after March, 1944. He testified as to the method he would use in determining the amount due Larson saying he "would first have to determine how much was due on the purchase price, and ascertain from the company the balance due on the mortgage, and this would be the amount Mr. Larson would receive on the property." Exhibits 9, 10 and 11, introduced by the defendants, being apparently statements made by the Northwestern Mutual Savings and Loan Association—the association through which after March 1944 the defendants sought to raise money to pay upon the exercise of their option—show there are twenty-six payments made of $65.00 each or $1,690.00 in all. These payments begin with June 1941. Defendants began collecting rent on April 1, 1941, but claimed they were not to pay rent to plaintiff until June 1, 1941. But Ex. A. provides rental payment was to begin April 1. Though no rent was paid until June nevertheless from then and

up to and including March 1944, the defendants would be required to make thirty-four monthly payments aggregating $2,-210.00. Evidently this is why the plaintiff and the court found the defendants were in default up to the end of March for eight payments in the sum of $520.00. With rent for April and May of 1941 it would be two more payments or $130.00. There is credited in these exhibits a payment of $130.00 made in October 1943. In addition there were payments of taxes made in 1942 and 1943 aggregating $208.68. Who paid these taxes and from what source is not shown on the exhibits.

It is conceded that defendants made no payments after the notice of default and demand for $520.00 was served upon them and up to the time of the appointment of the receiver.

In reference to the amount tendered as being the total amount due on the contract if the exercise of the option was valid the appellants say they do not "consider this particular point to be very vital." These exhibits were offered not so much to show the payments of rent but to show how much would be due on the contract in case the defendants could exercise an option and they include also computations of interest. The amounts claimed by the plaintiff do not include interest on default payments. Nothing is offered here to show the trial court erred in any appreciable extent in arriving at the amount of default rent.

. Exhibit A is not susceptible of any other reasonable construction than it is just as it is stated to be—a Lease with Option to buy. All suggestions or demands, or understandings or discussions or proposed arrangements between the parties, had prior to the execution of the instrument, are merged in the instrument unless omitted because of fraud or accident or mistake. If these discussions were contrary to Ex. A. they were deemed abandoned. See § 9–0607 and § 9–0705 of the Rev Code. The agent, who drafted the instrument, advised as to the nature of the instrument; both parties acquiesced; and later, defendants suggested amendments in harmony therewith.

Much is made of the fact that the defendants remodeled the building and evidence was offered showing the cost incurred thereby. It is undisputed that the plaintiff advanced $850.00 for

the remodeling. This sum was reached by agreement after consideration of probable costs and it is significant that in the lease, while the plaintiff gave the defendants permission to remodel and agreed to pay the cost thereof up to $850.00, the parties expressly agreed that any cost over and above $850.00 would be paid by defendants.

In July, 1941, defendants were collecting $87.50 per month rental and when the remodeling was completed the rentals were, as K. Wood stated, "built to about $112.00."

The defendant Kenneth Wood stated that this place was never his home, he never lived in it himself and when asked if he "entered into this lease with option to buy purely for speculation," he said, "We entered into it to eventually buy the property and get the income from it." He was then asked, "For investment and a speculating proposition. Is that right?" And he answered, "Right." The defendants intentionally took their chances on spending a larger sum for remodeling than the amount the plaintiff was to advance. They would get higher rent and. if they found it profitable they could buy.

On this trial anew we find as did the trial court and therefore the judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.