Lois J. ZITZOW and Duane T. Zitzow, wife and husband, Plaintiffs, Appellees, and Cross-Appellants,

v.

Art DIEDERICH and Theola Diederich, Defendants, Appellants, and Cross-Appellees.

Civ. No. 10359.

Supreme Court of North Dakota.

Aug. 23, 1983.

·Don R. Krassin, Wahpeton, for plaintiffs, appellees, and cross-appellants.

Simone M. Sandberg, of Johnson, Johnson, Stokes, Sandberg & Kragness, Wahpeton, for defendants, appellants, and cross-appellees.

**VANDE WALLE, Justice.**

Art and Theola Diederich appealed from a judgment of the district court, Richland County, awarding Duane and Lois Zitzow damages plus interest and costs and disbursements in the amount of $10,336.93 for breach of a contract which the trial court determined existed between the Zitzows and the Diederichs for the sale and purchase of the Zitzows' house. We reverse the judgment of the district court for the reason that we conclude that the agreement between the parties was an option and not a contract for the sale and purchase of a house.

I

Duane and Lois Zitzow listed their home for sale with Century 21 Realtors in 1978 and again on May 12, 1981. The May 12, 1981, listing agreement contained a provision that if the Zitzows sold the house to the Diederichs within 30 days of the date of the listing agreement, i.e., June 12, 1981, the Zitzows would not have to pay Century 21 a commission on the sale.

On the evening of June 10, 1981, after a tour of the Zitzows' home, the Zitzows and the Diederichs signed the following instrument which was prepared by Lois Zitzow on the Diederichs' stationery:

```
We hereby agree to sell the property located at 306 9thb  avenue south
Xaxxxxxxxxxxxxxx ·
Wapeton, ND to Mr & mrs. Arthur Diederich for the sum of $85.600.00
which inxxxt includes all app. up stairs ( stove refrig., freezer comb.,
mico waove and dishwasher   down stairs Knxxix -  t v  stereo comp
(tape player speaker etc.   extras riding lawn mower

taxes pro rated to be paid by buyer.

earnest money recieved in the amount of $1, 000.oo by check.  balanced
to be paid by Septemberb 1, 1981 in full upon delivery of keys.
```

dated this 10th day of june 1981.

Seller

Seller

Buyer

Buyer

Wittness

)
Wittness

According to the Zitzows, the instrument was signed after the Diederichs paid $1,000 earnest money and agreed to purchase the house. The Zitzows contend the instrument is evidence of a contract for the sale and purchase of their house.

According to the Diederichs, the instrument was signed only after Duane Zitzow said he would hold the house for them until September 1, 1981, if they would pay him $1,000 to do so. The Diederichs contend the instrument is evidence of an option to purchase the Zitzows' house.

At no time did the Diederichs pay or tender payment of the balance of the purchase price or enter into possession of the property.

The trial court in its findings of fact, conclusions of law, and order for judgment found from the instrument and parol evidence that the Diederichs had agreed to purchase the Zitzow house and concluded that the writing signed by the Zitzows and the Diederichs was a sufficient memorandum of the sale and purchase agreement.

## II

■ If the intentions of the parties to a contract can be ascertained from the writing, the interpretation of the contract is a question of law; but if the court must use extrinsic evidence to determine the parties' intentions in a written contract, those questions that cannot be resolved without use of extrinsic evidence are questions of fact for the trier of fact. *Olson v. Peterson,* 288 N.W.2d 294 (N.D.1980); *Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417 (N.D.1979).

■ After carefully examining the record and, in particular, the writing in question, we believe the intention of the Zitzows and the Diederichs, so far as is necessary for decision, can be ascertained therefrom. See Sec. 9–07–04, N.D.C.C. Therefore, the legal effect of the instrument is a question of law for this court to decide. *Olson v. Peterson, supra; Metcalf v. Security Intern. Ins. Co.,* 261 N.W.2d 795 (N.D.1978).

The distinction between a purchase contract and an option is contained in 91 C.J.S. *Vendor and Purchaser* § 5

"The chief difference between a contract to sell and purchase real property and an option to purchase such property lies in the fact that, while the former creates a mutual obligation on the part of one party to sell and on the other to purchase, the option merely gives the right to purchase, at a fixed price, within a limited or fixed time, *without imposing any obligation to do so.* There is a contract of sale, and not a mere option, *where the vendor is bound to convey to the purchaser* on the terms of the contract agreed on *and the latter is bound to purchase;* but where the purchaser is not

bound to accept the offer of the vendor or to take the property unless he subsequently agrees to do so, there is an option." [Emphasis added.]

See also *Hultberg v. City of Garrison*, 79 N.D. 356, 56 N.W.2d 319 (N.D.1953); *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325 (N.D. 1948); *Larson v. Wood*, 75 N.D. 9, 25 N.W.2d 100 (N.D.1947); *State v. Crum*, 70 N.D. 177, 292 N.W. 392 (N.D.1940).

■ A close examination of the instrument with which we are concerned reveals that although the Zitzows agreed to sell, the Diederichs did not agree to purchase. There is no language in the instrument which formally obligates the Diederichs to purchase the Zitzows' home. The absence of language expressly obligating the Diederichs to purchase is indicative of the intention of the parties to formulate an option to purchase only. Had they mutually intended the Diederichs to be obligated to purchase, they could easily have so provided in their "homemade" contract. However, the absence of specific language obligating a party to purchase is not necessarily fatal to a contention that an instrument was intended to embody an agreement for the sale *and purchase* of property if it appears *from the writing* that the intention of the parties was to consummate a sale. *Ashurst v. Rosser*, 275 Ala. 163, 153 So.2d 240 (1963). But no such intention is apparent in this agreement.

■ Section 9–06–04(4), N.D.C.C. (the Statute of Frauds), provides that an agreement for the sale of real property is invalid unless the agreement or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent. In *Johnson v. Auran*, 214 N.W.2d 641 (N.D.1974), this court noted that the sufficiency of a memorandum to constitute a contract that meets the requirements of the Statute of Frauds is a question of law for the court to determine and that whether or not an ambiguity exists in a memorandum asserted to be sufficient to constitute a contract meeting the requirements of the Statute of Frauds is a question of law for the court to decide. The court further concluded that to remove the contract from the Statute of Frauds, the memorandum must disclose the terms and conditions upon which the contract is entered and parol evidence may not be received to add to or vary the terms of the memorandum nor to supply a missing essential term of the agreement, although parol evidence may be received to explain and make certain the existing terms of the agreement as set forth in the memorandum.

■ We do not discern in the writing any indication of the parties' intention ultimately to consummate a sale. It is argued that the statement "balanced [*sic*] to be paid by Septemberb [*sic*] 1, 1981 in full upon delivery of keys" is indicative of an obligation to purchase, if it is interpreted to mean that on September 1, 1981, the Zitzows were obligated to give the keys to the Diederichs and at that time the Diederichs were obligated to pay the balance of the purchase price.

The statement, however, does not read "balance to be paid *on* September 1, 1981," but reads "balance to be paid *by* September 1, 1981." The significance of the use of the word "by" in determining the intent of the parties is that when the word "by" is used to express a relation in time, it means "not later than." Webster's New World Dictionary, 2d Ed. (1980), s.v. "by." Accordingly, a statement equivalent to the one at issue is "balance to be paid not later than September 1, 1981," and its clear meaning is that the Diederichs could pay the balance at any time they chose before September 2, 1981. It cannot mean that at any time prior to September 2, 1981, the Zitzows could deliver the keys to the Diederichs and then demand payment of the balance of the purchase price.

We believe the quoted statement may reasonably be construed to mean "If the Diederichs choose to purchase, the balance of the purchase price is to be paid in full not later than September 1, 1981, upon delivery of the keys." This construction is consistent with the statement's clear expression that the Diederichs could pay the balance of the purchase price at any time

prior to September 2, 1981, and is consistent with an option to purchase.

■ It is argued that the words "earnest money received," as used in the agreement, are indicative of an obligation to purchase. We do not agree. They are not words of art requiring the conclusion that the agreement is a contract to purchase. They apply as well to describe the consideration paid to keep an option to purchase viable for a specified period of time. See, e.g., *Lyons v. Noble*, 150 So.2d 64 (La.App.1963).

■ Both of the quoted provisions of the agreement, standing alone, are consistent with either an option to purchase or a contract to purchase. These provisions render the agreement less certain in its meaning, but they are not ambiguous. Although parol evidence generally is admissible to explain uncertain provisions of a contract, it is not admissible to supply an obligation sought to be enforced which is lacking in a contract protected by the Statute of Frauds. *Johnson v. Auran, supra;* 72 Am. Jur.2d, *Statute of Frauds,* § 296; 37 C.J.S. *Frauds, Statute of,* § 194.

■ Because the agreement contains only a promise by the Zitzows to sell and no promise by the Diederichs to buy, we conclude that the agreement, taken as a whole, is indicative of an option to purchase and not a contract to purchase. See *Kluttz v. Allison*, 214 N.C. 379, 199 S.E. 395 (1938). The writing gave the Diederichs the right to purchase the Zitzows' house at a fixed price, i.e., $85,600, within a limited or fixed time, i.e., by September 1, 1981, without imposing an obligation to do so. See 91 C.J.S. § 5, *supra.*

In view of our decision that the agreement between the Zitzows and the Diederichs was an option to purchase, and the Diederichs therefore were not obligated to purchase the Zitzows' house, we reverse the trial court's judgment awarding $10,336.93 as damages for breach of a contract for sale and purchase.

ERICKSTAD, C.J., SAND, J., and EUGENE A. BURDICK, Surrogate Judge, concur.

EUGENE A. BURDICK, Surrogate J., sitting in place of PAULSON, J., disqualified.

PEDERSON, Justice, dissenting.

The contract between Zitzow and Diederich is, to me, obviously ambiguous on its face. The mere labeling of Diederich as "buyer" rather than "optionee" is sufficient to raise doubt, at least as to the intent of the parties to the contract.

In determining the meaning of an ambiguous writing, the court must weigh the intrinsic evidence and make a finding of fact. Rule 52(a), NDRCivP applies. We have the choice of affirming or remanding for the preparation of more artful findings of fact. The majority opinion, by labeling the issue as one of law, evades the real question and permits this appellate court to perform a trial court function.